ANDREW C. GRAY, special bail of GEORGE GOSS, Defendant below, Plaintiff in error, *v.* ANDREW D. COOK, Plaintiff below, Defendant in error.

A decision by all the Judges in the Court of Errors and appeals in a case stated, and on a question of law reserved and directed by the Superior Court to be heard before them, is not final and conclusive, nor is it a judgment or decision of the Court of Errors and Appeals; but a writ of error will lie from the latter court to a judgment entered thereon in the Superior Court.

In an action on a recognizance against the bail, the bail is not liable for interest on ꞌ idgment recovered against the principal, nor for any sum exceeding the penalty of the recognizance; but when judgment is recovered thereon against him, it will. under the law and practice of this State, bear interest from the time it is recovered. And upon a writ of error, in such a case, to such a judgment entered by a Prothonotary in the Superior Court, in vacation, and without the order and direction of that Court, the Court of Errors and Appeals will take cognizance of and correct such error, and enter judgment for the amount of the penalty of the recognizance merely.

A statutory provision which limits and restricts to the citizens of this State exclusively, the benefit of exemption from arrest upon a writ of *capias ad satisfaciendum.* on a judgment without an affidavit of fraud against the defendant, made and filed before the issuing of it, is not in conflict with Sec. 2, Article 4, of the Constitution of the United States, which provides that "The citizens of each State shall be entitled to all privileges and immunities of citizens in the several states." but is valid and constitutional in its application to a citizen of another State.

THIS case was on a writ of error to the Superior Court for New Castle County, and was heard in this Court before

7

Harrington, Chancellor; Gilpin, Chief Justice; and Milligan, Associate Judge.

The case from below had been heard and decided before all the Judges in the Court of Errors and Appeals, on a case stated, and question of law reserved for their decision, on the main question involved in the present case, at the suit of *Andrew D. Cook, v. Andrew C. Gray,* and reported in 2 *Houston's Reports,* 455, and to which the reporter, to save repetition, here begs leave to refer.

*Patterson, for the defendant in error,* first asked the Court to disallow the exceptions to the record filed on behalf of the plaintiff in error, numbered one, two, three and twelve, respectively, and which were to the effect that the judgment below should have been rendered for the plaintiff in error, because it appeared by the record that although at the time of the recovery of the judgment in the action of Cook against Goss, the plaintiff therein was not residing in the State, and at the time of issuing of the writ of *capias ad satisfaciendum* thereon, to fix the liability of the bail of the defendant, the defendant also was not residing in the State; nevertheless, before the issuing of the said *capias ad satisfaciendum,* no affidavit of fraud had been filed against the defendant therein pursuant to the provisions of section 52 of chapter 111 of the Revised Statutes, such affidavit being requisite under the concluding paragraph of said section to the validity of the said writ, notwithstanding the passage of the subsequent act to amend that chapter, and which repealed the concluding paragraph of said section on the 21st of February, 1859, inasmuch as the said concluding paragraph being in force when the recognizance of bail was intered into, the said repealing act, if applied in that case, would impair the obligation of the contract of bail of the plaintiff in error entered into in said recognizance contrary to the provision of the Constitution of the United States, which prohibits a State from passing any law impairing the obligation of a contract. And also because as it appeared by the said record that the said defend-

ant in the said judgment was not a free white citizen of the State, but was a citizen of one of the United States, when the said writ was issued to fix the liability of the bail, he was as such entitled to the benefit of the first paragraph of said section 52 of chapter 111 which requires such an affidavit of fraud to be filed against a free white citizen of the State before such writ could be issued, under the provision of the Constitution of the United States, which guarantees to the citizens of each State all the privileges and immunities of citizens in the several States. His reason for making the motion to disallow those exceptions was that they involved the same issue and question of law which was presented and reserved for the consideration and decision of this court, the Court of Errors and Appeals, and all the Judges in this court, when the same case was formerly before it on the case stated, and which after thorough argument by the counsel and mature deliberation by the court, was decided in favor of the defendant in error, then the plaintiff in that case, and being a decision by all the Judges in this court between the same parties, and not only on the same subject matter but the same legal question substantially, it was final and conclusive, and could not even be questioned on a writ of error. *State Constitution, art* 6, *sec.* 7. A party cannot have two writs of *certiorari*, and a *certiorari* is a writ of error. 2 *Tidd* 772, 2 *Saund.* 101: A writ of error will not lie to the same court to review its own decision, and a writ of error after a judgment of affirmance is a nullity. *McRay v. Bank of Columbus*, 1 *Ala. Reps.* 587.

*D. M. Bates, Comegys* with him, for plaintiff in error. Although the exceptions objected to were filed in the case, they did not propose to argue them on the present hearing, as the questions of law involved in them had been fully and thoroughly discussed and considered and decided in the Court of Errors and Appeals, before all the Judges on a former occasion in the case referred to. But as the question of the power of this Court, as a Court of Errors, to

entertain these exceptions had been raised and it had been denied on the other side for the reasons assigned, they should contend that this Court had the power to review and revise the decision of all the Judges in the Court of Errors and Appeals in the case. There was certainly nothing in the proceeding, or in the decision of all the Judges in the Court of Errors and Appeals on the questions of law reserved in that case, to take away the right of either party to sue out a writ of error to the judgment entered thereon in the Court below; and having sued out a writ of error and brought up the record of the case below before this, the true and only Court of Errors in the State, it brings up the whole record of the case below, and it is competent for this Court to hear and revise any and all the errors in it, and the exceptions and errors here assigned and now objected to on the other side, as well as any others. The section and article of the Constitution which had been referred to on the other side, itself settled the question, the words of which are, "The Court of Errors and Appeals shall have jurisdiction to issue writs of error to the Superior Court, and to receive appeals from the Court of Chancery, and to determine finally all matters in error in the judgments and proceedings in said Superior Court, and all matters of appeal in the interlocutory or final decrees and proceedings in Chancery," and then the same section proceeds to prescribe how the Court of Errors and Appeals on a writ of error from the Superior Court shall be constituted, and that it shall consist of " three Judges at least." *Const. sec.* 7, *art.* 6. This then was the only Court of Errors and Appeals under the Constitution before which the case had ever been, and this was the only writ of error which had ever been issued by the Court of Errors and Appeals as created, defined and established by the Constitution, in this case. The hearing of the questions of law reserved in the case stated, to be decided by all the Judges in the Court of Errors and Appeals, was not a decision of the Court of Errors and Appeals within either the words or the meaning of the Constitution, and the opinion there-

fore which they may give in any such case, cannot conclude or prevent the true Court of Errors and Appeals on a writ of . error issued from it to the Superior Court, from entertaining jurisdiction and proceeding to hear and determine finally all matters in error in the judgments and proceedings of the Superior Court thus brought before it.

The fact that the defendant in the original action and judgment below was a non-resident when it was recovered and when the writ of *ca. sa.* was issued upon it, was admitted by the common or general plea of *in nullo est erratum* entered by the defendant in error to the writ of error then before the Court, which was in the nature of a demurrer and at once referred the matters of law only arising thereon to the judgment of the Court, but which traverses or denies no fact alleged in the record. For the rule of pleading in such case is, if the plaintiff in error assigns an error in fact, and the defendant in error would put in issue the truth of it, he ought to traverse or deny the fact, and so join issue thereon, and not say *in nullo est erratum*, for by so doing, he admits the fact alleged to be true. 2 *Tidd* 1117.

*The Court* overruled the motion of the counsel for the defendant to disallow the exceptions referred to, and directed the counsel for the plaintiff in error to proceed with the argument of the case.

*D. M. Bates.* There were twelve exceptions or causes assigned in the case, but which resolved themselves substantially into five only. The second section of the fourth article of the Constitution of the United States provides that "the citizens of each State shall be entitled to all privileges and immunities of citizens in the several States," and we shall contend that the subsequent and repealing statute of this State which afterward repealed the provision of the general and preceding statute which was in force when the recognizance of bail was entered into in this case, and which then provided that all persons, without

any reference to their residence, should be exempt from arrest on writ of *capias ad satisfaciendum* without an affidavit of fraud first filed against them, so far as non-resident debtors were concerned, and retaining it as to our own citizens, was in contravention of that provision of the Constitution of the United States, and was consequently null and void.    Before that general statute was enacted, every person and every citizen in the State was under a legal liability to be arrested for debt; but when that act was passed, it enlarged the liberty and secured the privilege and exemption from such arrest, of every citizen of the State, and of every citizen of every other State, without an affidavit of fraud first filed against him, specifying the nature and character of the fraudulent transaction in which it was alleged to consist, and when by the subsequent repeal of a portion of it and a modification of that general provision, the Legislature attempted to limit and restrict that great right, privilege and immunity to the citizens of our own State exclusively, and to deny it to every citizen of every other State in the Union, it was in violation of that provision of that constitution.    What are the mutual rights, privileges and immunities or exemptions (for that is the legal signification of the word "immunities") of citizenship in and of the several States of our one, united and common country, as contained in that clause of the constitution, had not been very well defined, and strange to say, no question had yet arisen in the Supreme Court of the United States in regard to the import and construction of it, and therefore no decision of that tribunal could be found upon the subject, but it had several times arisen before other tribunals of inferior jurisdiction, and in which it had been uniformly held that those terms clearly comprehend and include all legal remedies, as well as rights and exemptions and modes of redress for the recovery, collection and enforcement of debts and other general rights and liabilities at law, and that it is not in the power of the Legislature of any State to make any distinction whatever, in any such cases, between the citizens of its own and the citizens of any other State in the Union,

and that whatever rights, privileges and immunities of this description are guaranteed and secured by law to the citizens of one State by the Legislature of it, are common to the citizens of every other State by virtue of it. *Corfield v. Coryell*, 4 *Wash.* 380. *Douglass' Adm'r v. Stevens*, 3 *Chancellor Ridgely's notes* 547.

But independent of that broad ground of objection, there were other and special exceptions to the record to be noticed in connection with what he had already said, and the first of which was that there was error in the entry of the judgment below by the Prothonotary, because it was done by him in vacation without any order of the court below to him to so enter it, and without the authority or the agreement of the parties in the case to warrant it. In the next place there was error in the amount of the judgment as ascertained and so entered by him in the interest calculated, allowed and included by him in the judgment, because the bail was not chargeable with interest upon the judgment against his principal which was $5551.00, but only for the amount of such judgment, without interest thereon. 1 *Tidds* 281. *Waters v. Leese*, 3 *Taunt.* 502. The amount of the judgment as so ascertained and entered by the Prothonotary below was $6411.78. And why should the bail be liable for any interest on the judgment against the principal in such a case? For the liability for interest as such accrues when there was a contract either express or implied between the parties to it. 5 *Cow.* 604. And lastly there was error in the record because the judgment was entered below for a sum exceeding the amount of the penalty of the bail bond which was only $6000.00. *Rev. Code*, 416, *sec.* 10. 1 *Tidd* 540.

*Patterson.* This court had no jurisdiction of errors in fact, whatever might be the authority and practice of the courts of England sitting as courts of error in that country, and therefore the assumption on the other side that they had assigned as an error in fact that Goss, the defendant in the original judgment and the principal from whom the

recognizance of bail was taken, was at the time when it was recovered and when the *ca. sa.* was issued, a citizen of another State of the Union, and that the defendant in error by pleading *in nullo est erratum*, instead of traversing or specially denying the allegation, had thereby admitted it, was not only erroneous in point of law, but in point of fact too, because that fact did not appear by the record sent up and the record in question. But no error of fact could be assigned or alleged as a ground or cause of error in this court under the constitution and laws of the State, and therefore that plea could not be held to admit the truth of the allegation referred to, even if it appeared by the record, or was stated or assented to in the case stated, or in the record of the suit below, which was not the case, because it was no where alleged, much less admitted as a fact in the case, except in the causes of errors assigned by the counsel in this court. The authorities cited, in order to show that the modification and partial repeal of the general act by the subsequent act of the Legislature with a view to limit and restrict the exemption from arrest by *ca. sa.* for debt without an affidavit of fraud filed to obtain such a writ, to citizens of our own States, and to deny it to the citizens of other States, was in conflict with the clause of the constitution of the United States referred to, were not sound, and were not so considered to be at the present time; but even if they were so, they did not go to the extent of holding that such a distinction and discrimination in an act of the Legislature would be in derogation of it, and therefore unconstitutional and void. *Kincade v. Francis,* 3 *U. S. Dig.* 566. Where the statute concerns merely the regulation of the process and the proceedings in the courts of a State for the recovery of debts, it has been expressly ruled that such a distinction and restriction is not in violation of any provision in the constitution. *Campbell v. Harris,* 3 *Har. & McHen. Rep.* 535. *Murry v. M' Carty* 2 *Mumf.* 398. *Ward v. Morris et al.* 4 *Har. & McHen. Rep.* 340. *Towle's case,* 5 *Leigh's Rep.* 334. 1 *Lit. Rep.* 334. 10 *Cow.* 340. *State v. Clairborne* 1 *Meigs' Rep.* 331. *Frost et al. v.*

*Brisbin*, 19 *Wend.* 11. *Tatem v. Wright et al. Zabr.* 429. *Corfield v. Coryell*, 4 *Wash.* 371. *Sedw. on Stat. & Const. Law.* 601. *Story on Const. secs.* 1798, 1799, 1800. *Sarg. on Const.* 393. *Rawle on Const.* 29, 30, 31. 2 *Kent's Com.* 71. *Abbott v. Bailey*, 6 *Pick.* 89. But if the subsequent statute referred to was inoperative and void for the reason alleged, then the original statute prescribing an affidavit of fraud in any case whatever, was equally inoperative and void for the same reason, and there was practically no affidavit of fraud necessary in any case before the suing out of the writ. As to the objection that the judgment in this case was entered below in vacation by the Prothonotary without any order from the court below, and without the authority and consent of the parties in the case stated, that he should so ascertain the amount of it and enter the judgment, all he had to say in the first place was that there was no occasion or necessity for such an order from the court, and in the second place that it was expressly agreed in the case stated that the judgment should be so entered by the Prothonotary. But if there had been error in that particular, this court would not take notice or assume jurisdiction of such an error, for the court above which heard the question had nothing to do with directing the judgment to be entered, but by the agreement of the parties, as well as by the legal and constitutional functions of the two tribunals, the judgment was to be entered in the court below, and by the court below, and if erroneous in any such respect, that court was not only competent, but the proper tribunal to correct it, and this court would, accordingly, leave it to that court to rectify it. Besides, such matters of practice were not cognizable on a writ of error, and no writ of error would lie to any such proceeding, for the matter having been referred to the Prothonotary by the agreement of the parties, the court below would correct any such error on the application to it for that purpose. In reply to the objection made on account of the amount for which the judgment had been entered, he would remark that a judgment might be rendered on a collateral bond for an amount greater than the penalty

of it. *Harrison v. Clapp et al.* 1 *Mass.* 308. *Pitts v. Tilden*, 2 *Mass.* 118. *Cook et al. v. Toney*, 3 *Wend.* 444. *State v. Wayman*, 2 *Gill & Johns.* 279. And judgment might be recovered in a *scire facias* on a recognizance for the amount of the penalty with interest upon it. *Welford v. Davidson*, 4 *Burr.* 2127. *Bodily v. Bellamy*, 2 *Burr* 1097. The case cited on the other side from 3d *Taunt.* was an action of debt on a recognizance of bail, but it was regarded as analogous to a proceeding on the judgment to realize and collect the amount of it in that country, where a judgment does not bear interest after its recovery, unless the action be upon the judgment, which was quite common in England, and the action in that case not being on the judgment, which of course, it could not be, as it was against the bail, but was upon his recognizance of bail, the plaintiff could not recover in that action any interest on the judgment itself. But the law and practice was otherwise in this State, for a judgment here always bears interest from the date of its recovery, and therefore, the rule here should be just the reverse of what it is in that country on that point. Error in the amount of a verdict cannot be taken advantage of on a writ of error. 3 *Ala. Rep.* 516, 550, 715, but the party should apply for a new trial; and a matter not excepted to in the court below, cannot be excepted to in the court above. 7 *How. Miss. Rep.* 414. 12 *Ohio* 132. 24 *Wend.* 496. To return, however, to the constitutional question, he would say in conclusion that when a power, or authority had been claimed and exercised by a State for a long series of years, and ever since, or nearly ever since, the adoption of the federal constitution without objection or dispute, it was evidence of a cotemporaneous interpretation of the instrument in regard to the matter, and furnished strong ground for holding it to be constitutional. 2 *Gill* 487. And of this we had many instances in this State, such as the well known rule and regulation which peremptorily requires whenever it is demanded by the adverse party, every non-resident to give security for costs as a plaintiff in our courts, to entitle him to prosecute an ac-

tion, as well as other regulations of a similar character which might be mentioned.

*Comegys*, for the plaintiff in error, questioned the soundness of that conclusion. Where all or most of the States had for a long time uniformly concurred in maintaining such distinctions between the citizens of their own and those of other States, and they had never been questioned, it might afford some ground for the inference that they were not repugnant to the provisions of the Federal Constitution. But the practice of one State, or of a few States merely, could not in his opinion warrant any such conclusion. The causes of error had been assigned and filed in the case at least twelve months, and among them the fact was distinctly alleged that Goss, the defendant in the original action, was not a citizen of this State, but was a citizen of one of the United States when this writ of *ca. sa.* was issued, and the counsel on the other side well knew before he joined issue on the writ of error in this court, and entered the common plea, and the only plea upon the record, *in nullo est erratum*, that such an averment was contained in the causes of error so assigned, and the legal effect of it was beyond all doubt, dispute or question, to admit and acknowledge the truth of that allegation of fact in the case; for not having traversed or denied it, the conclusion of law was absolute, and it therefore stood admitted on the record.

The counsel on the other side, as well as the Prothonotary, had misapprehended and misunderstood the meaning of the agreement contained in the case stated, for there was nothing in it to authorize the Prothonotary to enter judgment in it in the court below. On the contrary, it was clearly contemplated and designed in it, that the court below should direct the entering of the judgment, not in vacation, but at the ensuing term of that court; the amount, of it, however, to be ascertained by that officer. And such was the understanding and intention of the court too, when the question of law was reserved and the case stated was sent

up by it, for the case, by order of the court, which appeared by the record, was thereupon continued in that court until the next term, and which, of course, imported that nothing further was to be done with it in that court, until its return, and that the court should at the succeeding or some subsequent term, give such further order in it as might seem proper to that court. But without any such order, or any order whatever from the court, it was entered by the Prothonotary in vacation immediately on its being sent back from the court above. But what authority has such an officer to enter such a judgment at any time without the special order and direction of the court, and especially in vacation? He was next proceeding to the consideration of the question of allowing interest on the judgment against the principal in this action against bail, and asked what was the measure and extent of the liability of the bail in such a case, when the court stopped him.

[*By the Court :* The bail was not liable for interest on the judgment recovered in the action against the principal, or for any sum exceeding the penalty of his recognizance in an action upon it; but when judgment was recovered thereon against him, of course, under the practice and the law of this State, it would bear interest from the time it was recovered.]

By virtue of the second Section of the fourth Article of the Constitution of the United States, the citizens of each State are entitled to and guaranteed the privileges and immunities of the citizens of every other State, and with reference to them in any and every State, the design of it was to put the citizens of all the other States upon a common level and a perfect equality with the citizens of such State within its limits; or, in other words, the liberal and benign object of it was, in this respect, to abrogate and abolish all territorial limits as between the States, and to prohibit all such ungenerous and invidious distinctions and discriminations by State legislation, or by that of Congress either, between the citizens of any particular State, and the citi-

zens of any other, or of all the other States, as he was sorry to say, seemed to have been attempted by the act of the legislature with reference to the citizens of all the other States now under consideration, and in which, perhaps, it was not strange to see in the course of providence, which often disappoints the best laid schemes and designs of men, the first effect of its injustice and hardship is visited, not upon a citizen of another State, but upon one of our own citizens. But what was the meaning of the term *privilege?* Jacobs defines it in his *Law Dictionary*, and as very pertinent to the present inquiry and the case before the court, in the definition and illustrations of its meaning, he has more to say about privileges from arrest for debt, and in proceedings and suits in courts of justice, than in any other examples which he presents in regard to it. In the case from 3 *Har. &c., McHen. Rep.* cited on the other side, Judge Chase said the clause of the constitution in question secures personal rights, &c. And if by law you exempt your own citizens from arrest on certain conditions, as for debt without fraud, which is a privilege or immunity of no insignificant value and importance to every honest, but unfortunate debtor, not only in our own State, but in every State in the Union, how can you deny it to every citizen in every other State of the Union, against that express provision of the constitution to the contrary? The numerous cases which had been cited on the other side, and which had been decided with reference to statutes of the States in regard to what are usually termed foreign attachments, did not conflict in the slightest degree with the construction he had been contending for, because the main and primary object of such enactments was simply to constrain a party out of the State to appear in its courts, but with every opportunity when he chooses to appear, to resist and defend the action against him, and which only sought in that respect, to put a citizen of another State on a par and an entire equality with every citizen in the State in which such statute had been enacted.

*The Court* announced their opinion that they considered

that there was no error in the record and proceedings, or in the entering of the judgment in the court below, except in the ascertainment of the amount of it by the Prothonotary of that court, and that at the time when that was done, the amount for which execution could have been issued, could not, by the laws of this State, have exceeded the amount of the penal sum mentioned in the recognizance of the said Andrew C. Gray, the special bail, which was six thousand dollars. It was, therefore, ordered and adjudged by this court, that the said judgment and proceedings in the said court below be in all things affirmed; but that the amount of the said judgment as heretofore ascertained by the said Prothonotary in excess of the said sum of six thousand dollars, be corrected and reduced, so that the same shall not exceed, on the 12th day of June, A. D. 1862, the time of the entry thereof, the sum of six thousand dollars mentioned in the said recognizance, exclusive of the costs of the suit and proceedings against the said Andrew C. Gray, special bail as aforesaid.