## In re GREEN.

(*Circuit Court, E. D. New York.* November 1, 1880.)

**1.** VOTER — ELECTION DISTRICT — RESIDENCE — NAVY YARD — MARINE — CONSTITUTION OF NEW YORK.—Under the constitution of the state of New York, a prior residence of 30 days in the election district is necessary to entitle a person to vote.

Under this provision in the constitution of the state, in order to prove a residence in an election district, something more must be shown than the fact of having lived in marine barracks, located within the limits of such district, in the capacity of a marine.

A residence in Brooklyn is not shown by proving the fact of leaving the place of former residence, and coming to Brooklyn for the purpose of enlisting as a marine, with the intent to return in case the application to be enlisted should be refused.

The acts of leaving New York and enlisting at the Brooklyn navy yard, under such circumstances, are to be deemed consecutive acts. No residence is acquired while proceeding through the streets of Brooklyn on the way to the navy yard for the purpose of enlisting, with the intent to return to New York if not enlisted.

No residence in the election district wherein the marine barracks are located is acquired by the act of enlisting there as a member of the marine corps of the United States navy.

The fact that the practice of the navy justifies an expectation, on the part of one enlisting as a marine in the Brooklyn navy yard, that the first two years of the term of enlistment would be spent in the Brooklyn navy yard, does not alter the case.

*S. V. Lovell,* for the marine.

*F. W. Angell,* Ass't Dist. Att'y, for the United States.

BENEDICT, D. J. This proceeding has been instituted for the purpose of obtaining a determination of the question whether the petitioner, James S. Green, has the right to vote at the coming election as a resident of the third election district of the twentieth ward of the city of Brooklyn.

From the affidavit of the petitioner and his examination the following facts appear: The petitioner is unmaried. During the year 1879, and up to May, 1880, he resided in the city of New York. He then determined to enlist in the marine corps of the United States navy, and then came to the city of Brooklyn for the purpose of enlisting as a marine. On the same day he enlisted at the Brooklyn navy yard for the term

of five years.   It is evident that the only object the petitioner had, in coming to Brooklyn when he did, was to enlist in the service of the United States, and there is no reason to doubt that he would have returned to the city of New York if his application to be enlisted had been rejected.   The ordinary course pursued in regard to the marines enlisted at the Brooklyn navy yard is to retain them there during the first two years of their service, and send them to sea for the remainder of their term.   The petitioner, therefore, enlisted with the reasonable expectation that he would be stationed at the Brooklyn navy yard for the two years next succeeding his enlistment.   Since the time of his enlistment the petitioner has lived in the barracks at the Brooklyn navy yard, which, for the purpose of this proceeding, will be assumed to be part of the third election district of the twentieth ward of the city of Brooklyn.   These facts do not, in my opinion, show, that the petitioner has a right to vote, as being a resident of the third election district of the twentieth ward of the city of Brooklyn.

The constitution of the state of New York contains the following provisions: "Every male citizen of the age of twenty-one years, who shall have been a citizen for ten days, and an inhabitant of the state for one year, next preceding an election, and for the last four months a resident of the county, and for the last thirty days a resident of the election district in which he may offer his vote, shall be entitled to vote at such an election in the election district of which he shall at the time be a resident, and not elsewhere.   For the purpose of voting, no person shall be deemed to have gained or lost a residence by reason of his presence or absence while employed in the service of the United States; nor while engaged in the navigation of the waters of this state or of the United States, or of the high seas; nor while the student of any seminary of learning; nor while kept in any alms-house or other asylum at public expense; nor while confined in any prison."

In order, therefore, to make it appear that the petitioner is entitled to vote in the district referred to, he must prove himself to be a resident of that district.   The provisions of the

constitution above quoted make it necessary, in order to prove a residence, that something more be shown than the fact that the petitioner has lived at the barracks in the navy yard, as a marine, since May last. He has shown that he left the city of New York and came to Brooklyn. But by such act he neither lost his residence in New York nor gained a residence in Brooklyn, because the act was done with the intent to return to New York in case his application to be enlisted should prove unsuccessful. There was no fixed determination to abandon New York as his place of abode when he left New York and came to Brooklyn. He has also shown that before he enlisted he was present in Brooklyn during a small portion of a day after he left New York. The maxim *de minimus non curat lex* would seem to be applicable to the short period of time spent by the petitioner in Brooklyn prior to the enlistment, while going from New York to the navy yard for the purpose of enlisting.

The act of leaving New York and the act of enlisting in the navy yard were substantially consecutive acts. If, however, the nature of the case entitles the petitioner to demand a consideration of any evidence claiming to prove a scintilla of presence in Brooklyn prior to enlisting, it must be said that the petitioner, while proceeding from New York to the navy yard in Brooklyn, had no present intent to take up his residence in Brooklyn, but only to remain in Brooklyn in the capacity of a marine if his application to be enlisted should prevail. The act and intent required to establish a residence are wanting. "There must be a settled, fixed abode, and intention to remain, at least for a time, for business or other purposes, to constitute a residence within the legal meaning of that term." *Nelson, J., Frost v. Birbin,* 19 Wend. 14. Neither was a residence in Brooklyn acquired by the act of an enlistment at the Brooklyn navy yard, for that was inconsistent with an intent on his part to make Brooklyn his place of residence. By the very act of his enlisting he made the place of his abode thereafter dependent not upon his own will, but upon the orders of his commanding officer. Some stress

has been laid upon the circumstance that, according to the practice of the service, men enlisted at the Brooklyn navy yard are stationed at that yard during the two years succeeding their enlistment, and that the reasonable expectation entertained by the petitioner at the time of enlistment was that he would be allowed to remain in Brooklyn for two years. But I am unable to see that the case is altered by this circumstance. The only intention the petitioner could have had in enlisting was to obey the orders of his commanding officer as to the place of his future abode. If he entered the service with the belief, hope, and expectation that he would be ordered to remain in Brooklyn, that does not affect the fact that by enlisting he made it impossible for him to have an intention of his own in regard to his residence at any particular place during the term of his enlistment.

The petitioner has sworn that he intended to come back to Brooklyn at the end of his five years of service, but he does not swear that he intended to make Brooklyn his place of residence at the expiration of his term of service; and, what is more to the point, he does not swear, and could not truthfully swear, that he left New York with the intention to reside at the barracks in Brooklyn navy yard, or that he came to the barracks with the intent to make the barracks his place of residence. He left New York with the intent to enlist if he could, or, if not, to return to New York—his then residence. He came to the barracks because he was ordered there, and with the intention to remain there until he should be ordered elsewhere, and no longer. By these acts he neither lost his residence nor gained a residence in the barracks.

It is not doubted that a sailor or soldier of the United States can acquire a residence while in the service. He may purchase or rent a dwelling and so gain a residence, as was the case in *Ames* v. *Duryea*, 6 Lansing, 155, and doubtless in other ways. But in order to gain a residence in an election district of this state, for the purpose of voting, he must do more than simply live at a place within the district by the

orders of his commanding officer.    If he do no more than that he acquires no new residence thereby, and the place of his residence at the time of his enlistment continues to be his residence for the purpose of voting without reference to where he may be stationed.