MUNROE v. WILLIAMS & TURLEY.

MUNROE & EVERETT v. SAME.

1. ATTACHMENT—NON-RESIDENT.—Where a party comes into this State and enters into a contract which will require several months of continuous residence, acquires property, and intends to engage in other business in this State after the completion of his first contract, he is not a "non-resident," within the meaning of that term as used in the attachment laws, even though his family (from whom he has been living apart for several years) are at his former home in another State. The terms "domicile" and "residence" are not identical or convertible terms.

Before HUDSON, J., Marlboro, January, 1891.

These were two attachment proceedings by Neill C. Munroe and Munroe & Everett against Williams & Turley. The appeal was from the following order, refusing to vacate the warrants of attachments:

The arguments in support of and against this motion were elaborate and instructive, and merit a more extended notice at my hands than is here given. But the urgency of the case demands a prompt judgment, and I must confine myself to an announcement of my conclusions of law and findings of facts.

In regard to the eight alleged irregularities, I have only to say that some do not exist, the allegations being founded in mistake; and those which do exist are not fatal to the validity of the writs, but are amendable. Being curable by amendment, and a motion to this effect having been made at the hearing, leave is hereby granted the plaintiffs to make the amendments craved or deemed necessary so as to cure the alleged irregularities.

After hearing the affidavits upon this point, and the argument of counsel as to what constitutes residence and non-residence under the attachment act, I consider that the defendants are not residents of this State. They are and have been for several years itinerant railroad builders, camping upon the lines of the roads upon which they have contracts in the different States only so long as it is necessary to complete the work, but re-

11—37

maining in no State long enough to acquire citizenship, nor entering any with such intentions. They have worked in Virginia, North Carolina, Alabama, Georgia, and are now at work in South Carolina, where their contract is nearing a close on the Charleston, Sumter, and Northern Railroad, in the counties of Marlboro and Darlington.

Reasoning as to the future from their past lives, I am convinced that they will next go and pitch their camps wherever they can get a contract to build a railroad, whether that be in another part of this State, or in Texas, or elsewhere. They cannot be said to reside in this State. The home of Williams, if he has a home or place of residence, is in West Virginia. Where Turley's place of residence or home is, I believe does not appear in the evidence, except in the statement of Williams, that, in 1884 or 1885, he met Turley in West Virginia, and began working with him, and has been in copartnership with him ever since. I regard West Virginia as the home and place of residence of these defendants, and find from all the evidence that they are not residents in this State, but only tarrying here until this contract is ended, when they will go hence. I know of no easier and more creditable way for them to dissolve these attachments than by paying these mill men for their lumber. That is the only manner in which they can relieve the situation and release the property from the levy, unless they replevy.

The motion to vacate the attachment in each case is denied, with five dollars costs to the plaintiff's attorney in each case. Let all the affidavits be filed in the office of the clerk of the Court of Common Pleas for Marlboro, and let all the costs incident to this motion be paid by the defendants.

Defendants appealed. The authorities of counsel upon the only point decided by the court are given below.

*Messrs. Nettles & Nettles,* for appellants, *cited* Drake Attach., §§ 58, 65; 42 N. W. Rep., 293; 38 Am. Dec., 425, 427; 59 *Id.,* 112; 96 *Id.,* 620; 55 *Id.,* 352; 2 Kent (13 edit.), 431, note; 1 Speer Eq., 16; 13 N. W. Rep., 282; 25 Fed. Rep., 197; 1 Wend., 43; 23 Pac. Rep., 56; 30 Gratt., 720; 19 Wend., 11; 32 Am. Dec., 423; 12 S. E. Rep., 197; 1 Am. & Eng. Enc. Law, 898; 30 S. C., 119.

*Messrs. Townsend & McLaurin,* contra, *cited* 12 S. E. Rep., 197; 30 S. C., 119; 9 Neb., 96; 1 Speer Eq., 1.

December 30, 1892. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. These two cases were writs of attachment, and heard together. They were issued against the property of the defendants as non-residents of the State. The property was seized in the counties of Marlboro and Darlington. The following is the affidavit upon which the first above case is based:

"THE STATE OF SOUTH CAROLINA, County of Marlboro. Personally comes before me, Neill C. Munroe, who, being duly sworn, says, that the defendants, Williams & Turley, are justly indebted to him, the plaintiff above named, in the sum of eighty-two dollars and eighty-two cents ($82.82), for lumber sold and delivered to said defendants. That the same is now due, and no part thereof has been paid, and said defendants refuse to pay the same. That said defendants are both non-residents of the State, but are here only temporarily working on the Charleston, Sumter, and Northern Railroad, the said Williams being a resident and citizen of the State of Virginia, and the said Turley being a resident and citizen of the State of North Carolina, so deponent is informed and believes; but that said defendants own property in this State, to wit: a lot of mules, lumber, railroad tools, wagons, moneys, in the counties of Marlboro and Darlington, all of which deponent wishes to attach as security for the said debt now due said plaintiff, and to this end has issued a summons in the above action. Wherefore, defendant craves a warrant of attachment for the purpose of attaching said property to secure said debt. (Signed) N. C. MUNROE.

"Sworn to before me, this December 19, 1890.

"(Signed) C. M. WEATHERSBY, Clerk."

The second attachment above was issued upon an affidavit in terms identical with the foregoing, except that it alleged that the defendants owed plaintiffs the sum of five hundred and seventy-three dollars and sixty-two cents ($573.62), for lumber sold and delivered.

On January 15, 1891, the defendants served notice of motions to vacate the attachments, upon a number of affidavits, which can not be reproduced here on account of their great length, but they are all printed in the Brief.   The following grounds were taken to set aside the attachments : (1) Because the warrants of attachment are not countersigned by the plaintiffs' attorney, as is required by law.   (2) Because the sureties on the attachment bonds or undertakings in both cases have not justified as required by law.   (3) Because the affidavits on which said attachments were issued have not been filed according to law.   (4) Because in the case of Munroe & Everett, there is no statement of the individual names of the plaintiffs nor allegations of partnership.   (5) Because there is no statement in either of said cases showing the individual names of the defendants, and no allegation of partnership between them.   (6) Because the defendants, Williams & Turley, are not non-residents of the State of South Carolina, but residents in said State, and are not subject to attachment as non-residents.   (7) Because there is no proof of the execution of the bonds or undertakings in said cases, as is required by law.   (8) Because the claims upon which the attachments issued are not sufficiently stated in the affidavits made to obtain the attachments.   (9) Because there has been no service of summons, nor order for publication, nor for such further order as may be just.   And for the cost of this motion.

The motions to vacate were made before his honor, Judge Hudson, upon numerous affidavits *pro and con;* and he held that he regarded West Virginia as the home and residence of the defendants, and found from all the evidence that they are not residents in this State, but only tarrying here until their contract is ended, when they will go hence, and he refused the motion to vacate the attachments.   From this order the defendants appeal to this court, upon the following grounds : *First.* Because his honor erred in holding that the failure of the sureties on the undertaking given by the plaintiffs (to justify), and upon which the warrant was issued in each of the cases, was not fatal to the validity of the writs, but amendable.   *Second.* Because his honor erred in holding that the failure to prove the

execution of said undertaking by the subscribing witness, as required by law, was an amendable defect. *Third.* Because his honor erred in holding that the defendants were not residents of the State. *Fourth.* Because his honor erred in not vacating said attachments, on the grounds that the sureties on the undertakings upon which the same were issued failed to justify, and the execution of said undertakings was not proved.

The argument here was elaborate and instructive, but from the view which the court takes, it will not be necessary to consider the alleged irregularities in the proceedings. We think the cases must be determined by the conclusion reached upon the third ground of appeal, which charges that his honor erred in holding that the defendants were non-residents of the State of South Carolina, in the sense of the attachment act. There was in the cases no allegation of fraud, in removing or attempting to remove the property, or otherwise. The defendants were not absent, but present within the jurisdiction of the court, and there was no obstacle to their being served with process in the usual way. The single ground for the attachment was, that the defendants were non-residents.

In section 250 of the Code it is provided, that "the warrant may be issued, whenever it shall appear by affidavit that a cause of action exists against such defendant, specifying the amount of the claim and the grounds thereof, and that the defendant is either a foreign corporation or not a resident of this State," &c. Were these defendants "non-residents" of the State, within the meaning of this provision, at the time these attachments issued? It seems that there is not in this State any case—at least, none was cited—in which the phrase "non-resident" has received judicial interpretation, but there are decisions upon the subject in other States. We do not think that *residence* and *domicile* are identical and convertible terms. "In determining whether a debtor is a resident of a particular State, the question as to his domicile is not necessarily always involved; for he may have a residence which is not in law his domicile. Domicile includes residence, with an intention to remain; while no length of residence, without the intention of remaining, constitutes domicile. *A resident* and an

*inhabitant* mean the same thing.   A person resident is defined
to be one 'dwelling or having his place of abode in any place.'
These terms are, therefore, used *synonymously.*"   Drake Attach.
(7 edit.), §§ 58, 59, and notes.

Were, then, the defendants non-residents of the State when
the attachments were issued?   That is a mixed question of law
and fact.   It is quite impossible, within proper compass, to
review all the affidavits, some of which are very long, but we
have read them carefully, and we think the substance correctly
expressed by the statement at the bar as follows, viz : "Frank
Williams, a native of West Virginia, left that State several
years ago, and has been engaged in railroad contracting.   He
left his native State never to return to it as a home.   He is
married, but, owing to incompatibility of temper, was separated
from his wife, and has lived for several years, and expects to
continue to live, separate from her.   Williams and Turley
came to South Carolina in May, 1890, with the intention of
remaining at least one year, and for further time indefinitely,
and have resided here continuously ever since.   They entered
into a binding contract with the Central Carolina Land and
Improvement Company, which would take very near a year, if
not longer, to complete, and have invested largely, and own
property in Marlboro and Darlington counties.   They have
resided steadily in this State since their arrival, and expect,
after the completion of their contract with the said company,
to engage in the timber business in South Carolina and remain
permanently.   They announced their intention to settle per-
manently in the State, and go into the timber business on the
Pee Dee, to several parties, months before these attachment pro-
ceedings were begun ; some of whom were T. E. Lupo, W. R.
Busbee, J. W. Reynolds, A. F. Cumber, and contracted to
purchase from J. W. Reynolds all the timber on his land on
the Pee Dee.   The statement is made positively by Williams
that this is his place of residence—that he has no home, if not
here ; that he left West Virginia years ago with no expectation
of returning to it as a home—and this is uncontradicted.
There is no evidence that Turley has a residence any where
else than South Carolina."

It is universally conceded that attachment is a very strong and rigid process, and this court has often held, that, before it issues, giving the great powers which it confers, the case in which it is issued should be plain, and every pre-requisite of the law complied with. This is required by the nature of the remedy itself, which, as we understand it, was intended to afford the means of making an absent debtor a party by seizing his property, when the court could not acquire jurisdiction of his person by the ordinary service of summons. As was said by the late Chief Justice Simpson, in the case of *Whitfield* v. *Hovey*, 30 S. C., 119: "Our Code provides that an attachment may issue against a non-resident under certain circumstances, and his property seized thereunder as a security for such judgment as the plaintiff may recover. This is, doubtless, because the defendant being a non-resident, the court can not obtain jurisdiction of the person of the defendant, and his creditors would be without remedy, unless jurisdiction could be acquired over his property in some way. Hence the attachment. It would seem, therefore, that where jurisdiction may be acquired without an attachment, the reason of the rule ceasing, the rule itself would not exist."

In *Carden* v. *Carden*, 107 N. C., 216, Shepherd, Justice, said: "Without deciding who in law is a *non-resident* in other respects, but confining the decision to a construction of the statute, the conclusion is that where one voluntarily removes from this to another State, for the purpose of discharging the duties of an office of indefinite duration, which required his continued presence there for an unlimited term, such a one is a non-resident of this State for the purposes of an attachment; and that, notwithstanding he may occasionally visit this State, and may have the intent to return at some uncertain future time. The prominent idea is that the debtor must be a non-resident of the State, *where* the attachment is sued out; not that he must be a resident elsewhere. * * *·* The essential charge is that he is not residing or living in the State—that is, *he has no abode or home within it*, where process may be served, so as effectually to reach him. In other words, his property is attachable, if his residence is not such as to subject him personally to the juris-

diction of the court, and place him upon an equality with other residents in this respect," &c.　See *Hanson* v. *Graham*, 82 Cal., 631; *Long* v. *Ryan*, 30 Grat., 720; *Frost* v. *Brisbin*, 19 Wend., 11, reported in 32 American Decisions, 423, and other cases cited in the argument of the appellants.

The case of *Long* v. *Ryan*, *supra*, was in reference to the residence of a railroad contractor and builder. It is too long to be cited at length, but the court said: "Upon this state of facts it is apparent that the word *resident*, like that of *domicile*, is often used to express different meanings, according to the subject matter. In statutes relating to taxation, settlement, right of suffrage, and qualification for office, it may have a very different construction from that which belongs to the statutes relating to attachments. In the latter, *actual residence* is contemplated, as distinguished from *legal residence*. \* \* \* While, on the one hand, the casual or temporary sojourn of a person in this State, whether on business or pleasure, does not make him *a resident* of this State, within the meaning of the attachment laws, especially if his personal *domicile* is elsewhere; so, on the other hand, it is not essential that he should come into the State with the intention to remain here permanently, to constitute him a resident," &c.

It is very clear from the facts of this case that the process of the court could have been served on the defendants personally. There was no fraud in the case. The defendants were not absent, but *present in the jurisdiction.* We do not think it was shown that they were non-residents in the sense of the attachment laws, and the decision below, refusing *to vacate* the warrants of attachment, *is reversed.*