(19 Misc. Rep. 80.) ·

## In re JONES' WILL.

(Surrogate's Court, Oneida County. December, 1896.)

WILL—PROBATE—RESIDENCE OF TESTATRIX.

Repeated declarations by testatrix that she intended thenceforth to live in another county, followed by an actual removal, is sufficient evidence of a permanent residence in said county, within Code Civ. Proc. § 2476, giving exclusive jurisdiction to take proof of a will to the surrogate of the county where decedent resides.

Proceedings for the probate of the will of Mary Jones, deceased. Dismissed.

Emmett J. Ball, for petitioner.
Josiah Perry, for contestant.

CALDER, S.  Upon the 9th day of October, 1895, a duly-verified petition was filed in the surrogate's office of Oneida county, praying that a certain instrument, made and executed on or about the 30th day of May, 1895, purporting to be the last will and testament of Mary Jones, deceased, be admitted to probate; whereupon a citation was duly issued, and upon the return day thereof the contestant herein duly appeared, and filed an answer, alleging that decedent was not at the time of her death a resident of the county of Oneida, but was a resident of the city of Brooklyn, in the county of Kings, N. Y., and that said paper mentioned in said petition was not the last will of the decedent, and that decedent made and executed another will, bearing date on or about the 3d day of September, 1895.

The question of jurisdiction having been raised, it is necessary to first determine, irrespective of the validity of the instrument here offered for probate, whether the decedent was in fact a resident of the county of Oneida.   The proponent is a stepson of a sister of the deceased.   The contestant is a stepdaughter of a deceased sister of Mary Jones, and is the person named as executrix in the will of September 3, 1895.

Section 2476 of the Code of Civil Procedure provides, as far as applicable to this controversy, as follows:

"The surrogate's court of each county has jurisdiction, exclusive of every other surrogate's court, to take the proof of a will, and to grant letters testamentary thereupon, * * * where the decedent was, at the time of his death, a resident of that county, whether his death happened there or elsewhere."

If the position of the contestant be maintained, this proceeding must be dismissed by reason of lack of jurisdiction of the surrogate's court of Oneida county.   It is conceded that some years prior to the latter part of August, 1895, the decedent lived in the village of Whitesboro, Oneida county.   In the latter part of August she came to the city of Utica, bringing with her a few articles of wearing apparel, and remained a few days with her sister, Mrs. Batchelor; but from the evidence it must be held that it was not her intention to change her place of residence from Whitesboro to Utica, for upon the 3d day of September she returned to Whitesboro, and on the evening of that day signed the will in which the contestant herein, Charlotte M. Waters, is named as executrix.   Mrs. Waters in the meantime had come from Brooklyn and was with testatrix on the evening of her return from Utica.   Upon the 4th day of September, she went to the city of Brooklyn with Mrs. Waters, the contestant, and lived with her until the time of her death, which occurred on the 6th day of October, 1895.   She was in the 80th year of her age.   It was insisted by the proponent that the testatrix was taken to Brooklyn by forcible means or by strategy exercised by Mrs. Waters, but a careful examination of the evidence

fails to substantiate either of these positions. She had a right to ask and entreat the testatrix to live with her in Brooklyn. Friendly relations existed between them, and in many instances they intrusted confidential matters to each other.

The Halbert house, where the decedent had lived in Whitesboro, was a subject of litigation, there being a prolonged contest over the will of Martha B. Halbert, who was a sister of Mary Jones. She was in this house, as it appears from the evidence, by sufferance, or for the reason that the contestants in the Halbert will case wished to have the house occupied by or in their possession. She stated, however, that, owing to the extreme cold weather and her physical condition, she could not remain in that house another winter.

Some comment was made that the decedent did not disclose to the proponent herein, Frederick Batchelor, who had from her a power of attorney, that she was going to Brooklyn upon her return from Utica; but taking into consideration the family relations of the decedent, as disclosed by the evidence, it cannot be considered either strange or peculiar. She was under no obligation to inform any one that she intended to change her residence, being restrained by no immediate family ties. The many letters offered in evidence, not necessary here to recite, and her declarations, throw some light upon this transaction. With a merchant she had several talks in the summer · of 1895; stating that she would like to live with her sister and Mrs. Waters, and that, as soon as the Halbert will case was settled, she was going to Brooklyn, to make it her home. In the week preceding her departure she stated that those were the last articles she would ever buy of him, as she was going to Brooklyn to live. To a butcher she stated that she was not fit to be alone where she lived, and that, if she ever got strong enough, she would go to Brooklyn, and that she could not live where she was another winter, which conversation took place the latter part of August, 1895. To a carpenter she stated that she wished to have certain locks fixed, and that she wanted it done before she went away. Witness William B. Williams detailed conversations at length which he had with testatrix, and some comment was made as to his testimony; but, as far as the evidence discloses, there seems to be nothing improbable in his testimony. To Williams she stated that she was preparing to go to Brooklyn; that she and Mrs. Waters were getting ready as fast as they could, packing a trunk; and asked witness if he would see to getting her trunk to the train. Witness in fact took testatrix to the train, and she stated to him that she was going to Brooklyn to live, and hoped that her last days would be pleasant. Christina Rahn testified that Miss Jones told her that she would like to go to Brooklyn; that her home was there, and her property was there, and she was going there to make it her home; that she told her that immediately preceding her departure; and that she had written a letter to Mrs. Waters to come up and take her to Brooklyn. Other witnesses were called, and gave in detail conversations

had with decedent as to her intention to make Brooklyn her future home. Some suggestion was made by proponent that testatrix went to Brooklyn simply to look after some property interests, intending to return to Whitesboro in a short time; but the evidence as a whole must be construed against such a proposition. The numerous letters offered in evidence by both sides, taken together, are not antagonistic to the theory of her actual change of residence. Some expressions were peculiar, and in some instances she would repeat things, but they were not indicative of a weak mind, and can only be construed as the usual condition accompanying old age.

The evidence introduced by the proponent has been carefully examined, but it fails to show that the decedent at the time of her death was a resident of Oneida county. The declarations as to change of residence would not be of much weight if they were not accompanied by the act of an actual change of abode, with the intention of remaining there. There must be a union of the fact and the intent. The intention to change is not alone sufficient. There must be an abandonment of a former residence, and the taking of another. Isham v. Gibbons, 1 Bradf. Sur. 69; Graham v. Public Adm'r, 4 Bradf. Sur. 127; Frost v. Bisbin, 19 Wend. 11; De Meli v. De Meli, 120 N. Y. 491, 24 N. E. 996; Dupuy v. Wurtz, 53 N. Y. 561. The law as applied to the facts in this case irresistibly leads to the conclusion that the decedent abandoned her residence in Oneida county, and acquired a new one in the county of Kings. An order may therefore be entered dismissing this proceeding.

Proceedings dismissed.