## In the matter of JOHN M. WRIGLEY.

A foreigner, who, after a residence of seven years in this state, transacting business as a commission merchant, returns home, taking with him his effects, *uncertain whether he will return or not*, loses his character of an *inhabitant;* so that though he returns to this state after a sojourning of only three weeks in his native land, he is not entitled to be discharged as an *insolvent debtor*, if after his return he engages in no business and his residence is merely of a temporary character.

In all *summary proceedings* under a statute, although enough is shewn in the institution of them to give jurisdiction to the officer entrusted with the execution of the powers conferred, if in the progress of the case it is discovered that in fact the officer has not jurisdiction, it is his duty to stop and dismiss the proceedings.

ERROR from the supreme court. Wrigley obtained a discharge from the recorder of New-York, as an insolvent debtor under the act to *abolish imprisonment for debt* in certain cases. At the time of presenting his petition, an affidavit was exhibited to the recorder that Wrigley was *an inhabitant*, actually residing within the city and county of New-York. On the day for the creditors to shew cause, the insolvent was examined as to his *inhabitancy*, and testified that he was a native of *England;* that he came to New-York in 1821, commenced the business of a commission merchant and continued in the same until the autumn of 1827, when he became embarrassed and unable to pay his debts and *determined to leave this country* for England, where his creditors resided. In the *spring of* 1828 he accordingly went to England, taking with him his books of account, it being uncertain *whether he would return or not.* After remaining in England about three weeks, he quit there, leaving his books, and returned to the city of New-York on the 12th day of May, *on his way to Canada,* if he should finally conclude to go there. He expected after his return to New-York to go to Canada, having prospects of doing a commission business there. On his arrival in this country he took board at Brooklyn, in Kings county, was an unmarried man, was engaged in no particular business, but went to his brother's counting-house in the city almost every day, and might have assisted him a little. He took board at Brooklyn for the purpose

of waiting until he should be advised of the arrival of certain goods which he expected to be consigned to him at Canada. He continued to board at Brooklyn until about the beginning of June, when he was arrested, confined and afterwards admitted to bail. Brooklyn was his home until his arrest, and he intended to go to Canada and reside there. After his arrest at Brooklyn he came to the city of New-York, where he was arrested in another suit and bailed, and boarded in New-York from that time until he presented his petition to the recorder, on the seventeenth day of June. He did not contemplate to go to Canada before July 1828, and his arrangements as to going there were not of that permanent character that he could not consistently with those arrangements have gone into business elsewhere had a favorable opening presented. The counsel for the creditors objected that Wrigley at the time of presenting his petition was not a *resident* in the city of New-York, within the meaning of the act. The recorder decided that Wrigley had never changed his residence in New-York, previous to the application to him for an order to shew cause, and that at the time of such application he could not be considered as having a residence within the meaning of the act in any place but New-York, and thereupon, after assignment, granted a discharge. The creditors sued out a *certiorari,* removing the proceedings into the supreme court, who gave judgment vacating the proceedings of the recorder, and Wrigley sued out a writ of error. See the opinion of the supreme court, delivered by the chief justice, 4 Wendell, 602.

*H. Ketchum,* for plaintiff in error. Before Wrigley went to England, the supreme court admit that he was an *inhabitant* of New-York. Did he, by going to England, cease to be an inhabitant? He did not, unless he intended to change his residence; and whether he did so intend, or not, was a *question of fact,* submitted to, and decided by the recorder, which decision should not be disturbed, unless clearly and manifestly wrong, as a conclusion from the facts before him. Unless the verdict of a jury, had they passed upon the facts, would have been set aside, the determination of the recorder will not be pronounced to be erroneous. The supreme court say that he

ALBANY,
Dec. 1831.

In the matter
of Wrigley.

ALBANY,
Dec. 1831.

In the matter
of Wrigley.

abandoned the country without any intention of returning ; the testimony is, that it was uncertain whether he would return or not. He did in fact return in May, with the intention, at all events, to remain until July, when he purposed to proceed to Canada ; but he did not .go there, and until he gained a residence there, he must be an *inhabitant* somewhere. There is no fixed or definite period of time to create a domicil of the person. A person being at a place is *prima facie* evidence that he is domiciled there. The place where a man has his home and residence is his domicil, and he has all the privileges, and is bound by all the duties flowing therefrom. The original domicil of the party always continues until he has changed it for another. 5 Vesey, 787. 2 Kent's Comm. 346, *n. c.* Original domicil means the last domicil, which must prevail until another is acquired. Leaving with intent to acquire a new domicil, does not divest rights until such new domicil is acquired. Here the intent was doubtful whether he should remain in England, or go to Canada. The statute requires that a person asking for a discharge, shall be an *inhabitant,* not a *resident,* of the place where the application is made. A *resident* is necessarily an *inhabitant,* but the converse is not true. One whose character is less definite than that of a *resident,* who is merely an inhabitant, may present his petition. There is no pretext of fraud in this case, as the petition was presented where the insolvent had resided for many years, from whence he had been absent for only a few months, and where his debts had been contracted.

*D. Graham, jun.* for defendants in error. The domicil of origin arises from birth, and remains until another is acquired. If Wrigley is not domiciled here, he is in England, the place of his birth. Admitting that he acquired a domicil in this country by his residence from 1821 until 1828, he abandoned it by his return to England. A domicil acquired by residence may be thrown off by a person returning to his native country. When Wrigley left, he abandoned his character as an inhabitant ; and on his return to England, resumed his domicil of origin. He did nor regain his character by his return, of if he did, he became an inhabitant of *Brooklyn,* and not of *New-*

York. But he did not become an inhabitant even of Brook-
lyn, being there only for a temporary purpose, awaiting the ar-
rival of goods. *Inhabitancy domicil* and *residence*, in reference
to cases of this kind, must be considered as standing on the
same footing. 4 Mason's R. 308. 1 Gall. 614. 7 Cranch,
542. 8 id. 335, 378. 5 Pick. 379. 2 Peters' Adm. R. 438, 450.
1 Binney, 349, n. 3 Greenleaf, 231. 5 id. 396. Stewart's
Adm. R. 6. A person situated like Wrigley would be adjudg-
ed a non-resident, under the practice of courts requiring non-
resident plaintiffs to file security for costs. 4 Moor, 356. 7 id.
613. 10 id. 522. 5 Barn. & Ald. 908. It is said that the
residence of the insolvent was a question of fact; and that it
having been passed upon by the recorder, his decision will not
be reviewed, unless manifestly wrong ; in answer to which it
is insisted that it is not a question of *fact*, but solely a question
of *law*, affecting the jurisdiction of the officer granting the dis-
charge, with which a jury, had they been impannelled, would
have had nothing to do. Respecting the facts, there is no
controversy ; the only inquiry is whether, under the facts of
the case, as represented by the insolvent himself, he was enti-
tled to apply to the recorder of New-York for a discharge. On
the part of the creditors it is insisted that the act should not
be so construed as to enable a person to apply for a discharge
in a county where he has but a casual or temporary residence,
the intention of the legislature being manifest that a debtor
should apply only where his creditors know him to reside.

The following opinions were delivered :

By the CHANCELLOR. The act to abolish imprisonment for
debt in certain cases, under which the plaintiff in error was
discharged by the recorder of New-York, adopts as part of its
provisions the sixth section of the act of April 12th, 1813, for
giving relief in cases of insolvency. 1 R. L. 463, § 6. Laws
of 1819, ch. 101, § 4. That section provides that the insol-
vent shall make application in the county of which he is an
*inhabitant*, or within which he is *imprisoned ;* and he is also to
make proof of that fact to the officer to whom he presents his
petition, before any order is made for notifying the creditors.

ALBANY,
Dec. 1831.

In the matter
of Wrigley.

At the time the petition was presented to the recorder in this case, viz. on the 17th of June, 1828, the insolvent proved to him, by the affidavit of Edward Wrigley, that the petitioner was an inhabitant actually residing within the city and county of New-York. This was sufficient to give the recorder jurisdiction of the case, and if nothing further had appeared on this subject, there is no doubt the discharge would have been regular. But on the hearing before the recorder, other facts relative to the inhabitancy of the insolvent did appear, which the supreme court have decided to be sufficient to show that the insolvent was *not an inhabitant* of the city of New-York at the time of his original application to the recorder, and that he was therefore improperly discharged. The questions which now present themselves for our consideration, are, 1st, whether the creditors had the right to inquire into the fact of the insolvent's inhabitancy, and 2d, if so, whether he was in fact an inhabitant of New-York, within the meaning of the insolvent acts, at the time of presenting his petition.

As to the first point, there is no doubt that the proof exhibited to the recorder at the time of presenting the petition was sufficient to give him jurisdiction of the case, so far as to protect him and all others acting under his legal orders upon such application ; but I apprehend the right of the insolvent to a discharge under the act, does not depend upon his making such proof to the officer, in the first place, as to give him jurisdiction to proceed. In all summary proceedings of this kind, although sufficient is made out to show a *prima facie* case of jurisdiction in the first instance, yet, if the party opposing the application, at the proper stage of the proceeding, shows that the supposed jurisdiction is founded upon a mis-statement or misapprehension of the facts, the judge or officer should dismiss the application, and proceed no further in the case. Thus, in the case of a proceeding under the act of the 12th April, 1813, where the insolvent is entitled to a discharge from his debts, on the petition of two thirds of his creditors, if the insolvent should present a petition to the recorder, showing that two thirds of his creditors had joined in the application, and that he had complied with the other requisitions of the act, the officer would unquestionably have jurisdiction of the case ;

but if the creditors at the time of showing cause could establish the fact that there were other creditors, not named in the inventory, so that in fact two thirds of the debts were not signed off, or that some other mistake of a similar character had been made, although the officer should be satisfied it was an actual mistake on the part of the applicant, he could not grant the discharge. Before the recorder was authorized to direct an assignment in this case, he must have been legally satisfied that the insolvent had *in all things* conformed to the provisions of the act. One of those provisions was, that the insolvent should make his application in the county of which he was an inhabitant; and if it turned out, on an investigation of that matter, that the insolvent was not an inhabitant of the city of New-York, the jurisdiction of the officer to grant the discharge would no longer exist, although he might be satisfied the application was made in good faith by the insolvent, under the belief that he was such an inhabitant within the meaning of the act.

The preliminary proof of inhabitancy required by the statute is to prevent abuse of the privilege of applying for a discharge and to insure a publication of the notice in the proper county, to enable the creditors to be informed of the application; but such *ex parte* proof was never intended to be made conclusive of the fact of inhabitancy within the county. It therefore becomes necessary to examine the question whether the plaintiff in error was in fact an inhabitant of New-York at the time of his application to the recorder.

If the legal domicil of the insolvent was in question in this cause, I think there could be no doubt that it was in England—his domicil of origin. He appears to have come to this state in the first place as a mere agent or commission merchant, and probably without any intention of making N. York his permanent abode. When he failed in business, he abandoned that city to return to his native country, without having made up his mind ever to come back from England. He subsequently concluded to try his fortunes in Canada, and left his domicil of origin the second time for that purpose. But as he had acquired no new domicil at the time of this applica-

tion, his original domicil continued. *Inhabitancy* and *residence* do not mean precisely the same thing as *domicil*, when the latter term is applied to successions to personal estate, but they mean a fixed and permanent abode or dwelling place for the time being, as contradistinguished from a *mere temporary locality* of existence. In the case of *Rosevelt* v. *Kellogg*, 20 Johns. R. 210, the supreme court decided that the term *inhabitants* in this statute meant the same thing as *residents*. It unquestionably means *incolæ* or sojourners, as distinguished from *advenæ*, transient persons or strangers. Although the plaintiff in error was an inhabitant of New-York while he was actually located there and doing business as a commission merchant, yet the moment he broke up his residence and sailed for his native land, *sine animo revertendi*, he was no longer an inhabitant of New-York, but he resumed his domicil of origin. *Les Trois Freres*, Stewart's Adm. R. 6. What then are the circumstances under which he claims to have become an inhabitant or resident of the city of New-York in June, 1828? After staying in England a few weeks, without being able to settle with his creditors, he arrived at New-York on the 12th of May, on his way to Canada, where he expected to go into the commission business. He took lodgings at a boarding house in Brooklyn to wait the arrival of the goods which he expected would be consigned to him in Canada. He remained at Brooklyn until the fore part of June, when he was arrested by some of his creditors. He then came over to the city, where he was again arrested and bailed; and he remained there at board for a few days, when he presented his petition for a discharge under the insolvent act. From these facts, I think there is no foundation for a pretence that he was a resident or inhabitant of the city of New-York at that time, according to the spirit or intent of this provision in the statute.

I am therefore of opinion that the decision of the supreme court was correct, and that the judgment should be affirmed, with costs.

By Mr. Senator ALLEN.  A single question arises in this case, viz. was the plaintiff in error an inhabitant of the city of New-York, within the meaning of the statute ?  The pro- vision of the act is, that every person applying for the benefit thereof shall make application in the county of which he or she may be an *inhabitant,* or wherein he or she may be *imprisoned,* and not elsewhere.  An *inhabitant* is defined to be a householder in a place, as inhabitants in a vill are the householders in a vill.  The word *inhabitants* includes tenants in fee simple, tenants for life, tenants at will, and he that has no interest but his habitation and dwelling.  He who hath a house in his hands in a town may be said to be an inhabitant. Jacobs' Law Dict. tit. Inhabitants.  The plaintiff in error certainly was an inhabitant of the city of New-York while he transacted business there, from 1821 to 1828 ; but on his leaving the United States for England, his native place, uncertain whether he would return or not, it is a question whether he did not on his arrival in England resume his residence there, and annul his residence in the United States.

In the case of *Harvard College* v. *Gore,* 5 Pick. 379,  Chief Justice Parker held that the constitutional definition of *habitancy,* is the place where a man dwells or has his home ; in other words, his domicil ; an actual removal into another town with an intention to become an inhabitant, made him one. The plaintiff returned to the United States in May 1828, on his way to Canada, where he had prospects of business, and he took board in Brooklyn, Kings county, waiting for advice of goods, which were to have been consigned to him at Canada. He was not therefore an inhabitant of New-York during this period ; but if an inhabitant of any part of the United States, it was of Brooklyn.  I doubt, however, whether he could even be considered an inhabitant of Brooklyn, in the sense intended in the above case ; it not appearing to be his intention to make that his place of residence, as he was only there temporarily, waiting for advice of the goods expected to arrive at Canada, where he intended to go and reside.

In *Guise* v. *O'Daniel,* 1 Binney, 349, Judge Rush in delivering the opinion of the court, observed, that the apparent or avowed intention of constant residence, not the manner of

it, constituted the domicil. It may be defined to be a residence at a particular place, accompanied with positive or presumptive proof of continuing it an unlimited time. And in the case of *The Inhabitants of Turner* v. *The Inhabitants of Buckfield*, 4 Greenleaf, 231, the question was, what is meant by being resident in a particular town? The court held, that by the word *dwells* and has his *home*, the legislature meant to designate some permanent abode or residence, with an intention to remain or at least without an intention of removal. The plaintiff, after his arrest, imprisonment, and being bailed in the county of Kings, came to New-York, where he was again arrested; and from early in June to the time of his application for the benefit of the insolvent act, which was on the 17th of June, he boarded in New-York. It appears, therefore, that at the most, he could have resided in New-York only about two weeks, after his return to this country and before applying for his discharge under the act; and if intention is to govern, and all the cases seem to decide that it is, then it is evident from his own testimony it was not his intention to make any other place than Canada his permanent residence.

The case of *Cotton* v. *Gladding*, 4 Mason, 308, is in point. Gladding was a native of Rhode-Island. He was a young unmarried man, and was in business in New-York for some years, when his house failed; after which occurrence he returned to Rhode-Island, and resided with his mother. At the time of prosecution, he was engaged as a clerk in a store of his brother in Connecticut, but occasionally visited his mother; there was no act shewing his intention of a permanent residence in Connecticut. Judge Story *held* that he was a citizen of Rhode-Island; his birth was in that state. While in New-York in business, he may be deemed to have acquired a citizenship there, as he probably intended a permanent residence; but when the house failed, he gave up his residence in New-York and returned to his mother's family; under such circumstances he must be presumed to have regained the family domicil, and to have returned to his native allegiance. Upon his return from New-York, he re-acquired his native citizenship. What evidence is there that he has since changed it? It does not appear that he had any intention of becoming a citi-

zen of Connecticut ; for aught in the case, his engagement may have been merely temporary until he could get other business, and without any intention of changing his domicil. The case might have been different if he had had a family, and removed with them into Connecticut ; such an act would afford *prima facie* evidence of a change of permanent domicil. There is some similarity between the above case and the one under consideration. Both parties were natives of places foreign to that where they were arrested ; both were unmarried men ; both were in business in New-York for some considerable time ; both failed in business there ; both, after the happening of that event, returned to their native place. At the time of arrest in New-York, one was occasionally assisting in his brother's counting house ; the other, at the time of arrest in Connecticut, was engaged as a clerk in his brother's store, and there was no act shewing that either intended a permanent residence.

<div style="float:right">ALBANY,<br>Dec. 1831.<br><br>In the matter<br>of Wrigley.</div>

I am therefore of opinion, from the best consideration I have been enabled to give the case, that the plaintiff in error was not an inhabitant of the city of New-York in the sense intended by the legislature, and that therefore the judgment of the supreme court ought to be affirmed.

On the question being put, *Shall this judgment be reversed ?* *four* members expressed their opinions in the affirmative, and *fourteen* in the negative. The members who expressed their opinions in the affirmative, were Senators FULLE, LYNDE, WARREN and WESTCOTT.

Whereupon the judgment of the supreme court was *affirmed.*