FROST & DICKINSON *vs.* BRISBIN.

A person having his *domicil* here, who carries on business *out of this state* and *personally* superintends the same, is *not a resident of this state* within the meaning of the act to abolish imprisonment, and may accordingly be arrested here for a debt arising upon contract. The *domicil* of a party may be in one state and his *actual residence* in another.

And such person may be arrested, although he has been here *more than a month* previous to the commencement of the suit against him, if he returned only on a visit and not with the intention *permanently* to remain here.

The object of the statute was to limit the privilege from arrest to persons *permanently residing for the time being* in the state, whose property is within the reach of the process of our courts, and who are liable to all the coercive measures known to the laws of the state for the collection of debts: all others are liable to arrest.

Upon this construction, no distinction is made between the citizens of this state and other states, and the act is therefore constitutional.

MOTION under the *act to abolish imprisonment, Statutes, sess. of* 1831, p. 396, § 1, 2, to be discharged from arrest, and that the bail bond given to the sheriff by the defendant be delivered up to be cancelled. In May, 1836, the defendant, a citizen and resident of this state, purchased a large amount of merchandize in the city of New-York, telling the merchants from whom the goods were purchased, that he was going to Milwaukie in the territory of Wisconsin, and that he intended to establish himself there as a merchant, and to make that place his future residence. He accordingly went to Milwaukie, took his goods with him and established himself in business there, leaving, however, his wife and child at board at his former residence in this state. He continued in business at Milwaukie, *personally* attending to it until *March* last, when he returned to his former residence on a *visit*, and remained until *May*, when he was arrested in this suit and held to bail. Since his arrest he has returned to *Milwaukie* and is still engaged in conducting his business there. In December last he was appointed by the legislature of the territory of Wisconsin a commissioner to receive subscriptions and distribute the stock of a bank, and he was also appointed a director of the same;

Sept. 1837.

which offices it is fairly to be inferred were accepted by him. The defendant produced the affidavits of several of his intimate friends and acquaintances, persons familiar with his views and purposes, who state that when he went to Milwaukie he had no fixed purpose to make that place his permanent residence or abode, unless he was successful in business ; that he had not been successful as he had repeatedly alleged, and that he intended to break up as soon as he could close his business and return to his former residence, with purposes uncertain, however, as to his future course.

C. Ellis & S. Stevens, for the motion.

M. T. Reynolds, contra.

By the Court, NELSON, Ch. J.   The act of 1831, abolishing imprisonment for debt in this state, provides that no person shall be arrested on civil process in suits brought upon contracts express or implied, except in cases where the defendant " shall not have *been a resident* of this state for at least one month previous. to the commencement of a suit against him." The question here is, whether the defendant at the time of the arrest in *May* last, was a non resident, or in other words, whether he was a resident of the state for the above space of time *within the meaning of the act.*

If the decision of the question turned upon the formed intention and purpose of the mind of the defendant without reference to the fact of actual residence, the preponderance of the proof is in favor of the motion ; but if we are bound to regard this fact independently of any mental reservations and intents, then I think the opposite conclusion is best supported.

The affidavits show that the place of business of the defendant is out of. the state, (at Milwaukie,) and as conceded, the management of his business is under his *personal* supervision and control; that since May 1836 to the present time, he has been and now is engaged in conducting business at that place ; and that he commenced business there as a

merchant, with intent to make it his permanent residence. The mental condition about success, which is sought to be attached, if sufficient, might always be urged to defeat a residence when necessary, as few persons probably intend to remain permanently at a place in unsuccessful business; neither do they engage in it expecting it to be so. It may, therefore, I think, be safely assumed the defendant commenced business at Milwaukie as he honestly declared to his creditors, with the intent to make it his permanent residence, and that at least he was a resident there till he found by trial his business did not succeed. Did his change of mind while continuing in business there, even with a view to close it up, and before closed up and removal, operate as a change of his residence? The answer to this question will depend upon the meaning or legal import of the term *residence*, in the connection in which it is used in the statute.

In the matter of *Fitzgerald*, 2 Caines, 317, it was decided that a person coming into this state and remaining for a special and temporary purpose, without any intent of settling here, was not a *resident* within the meaning of the act for relief against absconding debtors. In the matter of *Thompson*, 1 Wendell, 43, the court held under the same act, but in respect to an absent debtor, that residing abroad, engaged in business for a time, whether permanently or temporarily, was a "residing out of the state" within the meaning of the statute; that the *actual residence* of the debtor was contemplated, which might be distinct from the place of his domicil. In the matter of *Wrigley*, 4 Wendell, 602, 8 id. 134, it was held that a person remaining temporarily for a month in the city of New-York and Brooklyn, intending to commence business in Canada, was not an inhabitant *or resident*, within the meaning of the insolvent act of 1813. In *Roosevelt* v. *Kellog*, 20 Johns. R. 210, 11, a *resident* of a place is said to be synonymous with an *inhabitant*, one that resides in a place. It may, I think, be doubted if this position is strictly accurate, as the latter term implies a more fixed and permanent abode than the former; and frequently imports many privileges and duties which a mere resident could not claim or be subject to. Approved

lexicographers give a more fixed and definite character to the place of abode of the one than the other. Be this however as it may, the cases cited above, establish that the transient visit of a person for a time at a place, does not make him a resident while there; that something more is necessary to entitle him to that character. There must be a settled, fixed abode, an intention to remain permanently at least for a time, for business or other purposes, to constitute *a residence* within the legal meaning of that term. The cases above referred to for the illustration of its meaning, are quite pertinent to the present question, as the statutes in which it was used, and which it was the object of the cases to expound, related to a kindred subject, namely, the regulation of the rights and remedies of *creditor* and *debtor*. One of these cases expressly, and all of them virtually, decide that *actual residence*, without regard to the *domicil* of the defendant, was within the contemplation of the statutes. Whether, therefore, the defendant had so established himself at Milwaukie as to work a change of his domicil or not, is immaterial; for if we concede he has not, he may still be a *resident* there. The domicil of a citizen may be in one state or territory and his actual residence in another.

I have already said that we are bound to assume upon the facts before us that the defendant commenced an actual and permanent residence at Milwaukie in the spring of 1836. But we must also concede, I think, that since that time he has resolved to break up his business there as soon as it can be conveniently closed, and return to his former place of residence. Has this change of intention worked a change of residence? for this is the most that can be pretended. If our exposition of the meaning of the term in the statute is correct, it clearly did not. His actual residence is still at Milwaukie. He is still carrying on his business there, and may continue it for such time as he pleases. Change of mind may lead to change of residence, but cannot with any propriety be deemed such of itself.

It was urged on the argument, that if it were admitted that the defendant was a resident and had his domicil at

Milwaukie, still, as he had been in this state more than a month previous to the arrest, he was within the exception in the statute; and that the mere being in the state as a transient person for that time was sufficient. The cases we have already referred to, sufficiently repudiate this construction.

But it is said without such interpretation the statute is in violation of the constitution of the United States, art. 4, § 2, which ordains that " the citizens of each state shall be entitled to all the privileges and immunities of citizens in the several states." This is obviously an erroneous view of the constitution. Our own citizens must be *residents* for the month, to be entitled to the exemption under the statute. The privilege from arrest does not depend upon *citizenship* or *domicil*, any further than they may include residence but upon *residence*, such as we have endeavored to explain. The idea of the statute was to limit the privilege to debtors living permanently in the state for the time being, which it was presumed would generally bring their property within the reach of execution; or enable the creditor to apply any other coercive measure in the collection of his debt, which the laws have provided. All our construction of the statute exacts, in respect to citizens of other states or territories is, that they shall put themselves on a footing with our own citizens, and then they are entitled to the like immunities. Surely this clause of the constitution enjoins nothing farther. The argument goes the unreasonable length of claiming for citizens of other states privileges surpassing our own.

Motion denied, with costs.