## BARNEY v. OELRICHS.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
SOUTHERN DISTRICT OF NEW YORK.

No. 177. Argued January 30, 1891.—Decided March 2, 1891.

The residence out of the State of New York which operated to suspend the
running of the statute of limitations under section 100 of the Code of
Civil Procedure of 1849, as originally framed, was a fixed abode, entered
upon with the intention to remain permanently, at least for a time, for
business or other purposes.

THE case is stated in the opinion.

*Mr. Assistant Attorney General Maury* for plaintiff in error.

*Mr. Frederic D. McKenney* for defendants in error.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

This was an action brought against Hiram Barney to
recover back money alleged to have been illegally exacted by
him when collector of the port of New York, as duty on cer-
tain charges and commissions, and as fees for services rendered
in the custom-house in connection with merchandise imported,
and was commenced in the Superior Court of New York City
by service of summons, dated March 27, 1868, on the defend-
ant, April 16, 1868, and subsequently removed into the Circuit
Court of the United States for the Southern District of New
York.

The declaration consisted of the common counts, and, in
addition to the general issue, defendant pleaded that the sup-
posed several causes of action did not any of them accrue at
any time within six years next before the commencement of
the suit; to which the plaintiffs replied that, after the several
causes of action had accrued, "defendant departed from and
resided out of this State for several successive periods, amount-
ing in the aggregate to twelve months, and this suit was
brought within six years and twelve months after the said

several causes of action, and each and every one thereof accrued to these plaintiffs;" and defendant rejoined that, "before the commencement of this suit, he, the said defendant, did not depart from and reside out of this State for several successive periods, amounting in the aggregate to twelve months, in manner and form, etc.," concluding to the country.

As this and many other similar causes involved, as respected duties alleged to have been illegally exacted upon charges and commissions, the examination of long accounts, of numerous invoices, entries, and other documents and papers, and the taking of the testimony of various witnesses touching the same, the several causes were sent by the court, without objection, to a referee, who took evidence and reported thereon, and whose report in this case was considered upon exceptions, and the conclusions reached by him made the basis of instructions to the jury upon the trial, which took place January 18, 1886. As to the fees, the jury were instructed to find for the plaintiffs in the amount of $289.12, being $113.60 principal, and $175.52 interest; and as to the duties overpaid, in the amount of $1076.74, being $406.85 principal, and $669.89 interest; and a verdict was returned accordingly, making with some further interest and costs, a total of $1586.14 for which sum judgment was rendered.

The case having been brought to this court, counsel for plaintiff in error asks for a reversal upon the ground that the Circuit Court erred in its ruling upon the statute of limitations, and as the argument was addressed to that point alone, our consideration of the record will take no wider scope.

The causes of action declared on accrued prior to the act of June 30, 1864, (13 Stat. 214, c. 171, §.14,) prescribing the time within which actions against collectors might be brought, and while the act of February 26, 1845, (5 Stat. 727, c. 22,) was in force, which preserved to parties paying duties under protest the right to maintain actions at law to test the validity of such duties. Whatever limitation existed was to be found in the State law, and in this instance, in sections 91 and 100 of the Code of Procedure of April 11, 1849, c. 438, of the statutes of New York. By section 91 the limitation of six years was

applied to "an action upon a contract, obligation or liability, express or implied, excepting those mentioned in section 90," exceptions not material here. Section 100 was as follows: " If, when the cause of action shall accrue against any person, he shall be out of the State, such action may be commenced within the terms herein respectively limited after the return of such person into this State; and if, after such cause of action shall have accrued, such person shall depart from and reside out of this State, the time of his absence shall not be deemed or taken as any part of the time limited for the commencement of such action."

Included in the amount claimed for overpaid duties, and in the verdict and judgment, were certain items for payments made more than six years prior to the commencement of this suit. To sustain the contention that these items were not barred, plaintiffs put in evidence a letter of the defendant stating that during the seven years from April, 1861, to April, 1868, his absences from the city of New York were all temporary, and, though frequent, were for short periods, varying from one day to perhaps forty or fifty days; that there were probably only two or three as long as forty days, and not more than one as long as fifty days; that they consisted mainly of brief visits to Washington during the first four years, and visits to Iowa and Wisconsin and the South during the following years; and that he estimated that they averaged two months a year. Some evidence of failure in attempting to serve process was also adduced. Mr. Barney testified on his own behalf that he had resided in the State of New York nearly fifty, and in the city nearly forty, years, including from 1861 to 1870 inclusive, during which time he did not reside at any other place than Kingsbridge, now in the city, and never voted elsewhere than in the city except from 1842 to 1852, when he lived in Brooklyn; that he had always had an office in the city of New York; that his absences from the State were never with the intention of remaining away, except for the temporary purposes of pleasure or business; and that there was one absence in Iowa and Wisconsin on business which he thought was over fifty but less than ninety days.

The court held as matter of law that all the absences referred to should be accumulated and not taken as a part of the period of limitation, which being done, the statutory bar was not made out. The question is whether, under section 100, defendant was properly held to have departed from and resided out of the State of New York during these absences. If in the administration of his office he were called to Washington for twenty-four or forty-eight hours, or if he visited some seaside or mountain resort not in New York for a few days' recreation, or if business demanded his attention temporarily in other States, did defendant reside out of the State of New York within the intent and meaning of the statute? We do not think he did, and that the words "to reside out of the State" meant the taking up of an actual abode or dwelling place elsewhere, and not a mere temporary sojourn for transient purposes.

The inquiry is as to the meaning of the words as used. If "residence" were always synonymous with "domicil," or even with "inhabitancy," there would seem to be no room for contention; but if the language here was intended to express something less than domicil or inhabitancy, then the proper definition must be arrived at in view of that intention and the subject matter to which the words were applied, and we are of opinion that "to reside out of the State" comprehended something more than alighting at a place in travel or in pursuit of temporary objects, and such we understand to be the result of decision by the courts of New York.

In *Penfield* v. *Chesapeake &c. Railroad*, 134 U. S. 351, we had occasion to consider when a person might be properly held to be a resident of the State of New York and entitled to bring an action which would have otherwise been barred by the laws of the defendant's residence, and this involved an examination of the decisions in that State in the construction of the words "resident" and "residence," as contained in its statutes. The cases of *In re Thompson*, 1 Wend. 43; *Frost* v. *Brisbin*, 19 Wend. 11; *Haggart* v. *Morgan*, 1 Selden (5 N. Y.) 422; and *Weitkamp* v. *Loehr*, 53 N. Y. Superior Ct. 79, were cited and quoted from as showing that within the meaning of

the statutes regulating attachments against the property of debtors, and arrest on civil process for debts, it was the actual residence of the defendant and not his domicil that determined the rights of the parties; while *Burroughs* v. *Bloomer*, 5 Denio, 532; *Ford* v. *Babcock*, 2 Sandf. (N. Y.) 518; *Cole* v. *Jessup*, 10 N. Y. 96; *Satterthwaite* v. *Abercrombie*, 23 Blatchford, 308; and *Engel* v. *Fischer*, 102 N. Y. 400, were referred to as sustaining the conclusion that a like construction had been given to the words in that clause of the statute of limitations which provided that if, after the cause of action shall have accrued, the defendant shall "depart from and reside out of this State, the time of his absence" shall not be included in the period of limitation. And because it did not appear in the case that the plaintiff had taken up an actual residence in the State of New York, it was held that he could not avail himself of the statutes of that State in order to recover.

In *Wrigley's Case*, 4 Wend. 602; 8 Wend. 134, it was decided that a person whose legal domicil was England, but who had done business in New York for some years, then returned to England, and again to New York, remaining for a time, with the intention of settling in Canada, was not an inhabitant or resident within the meaning of the New York insolvent act of 1813, and in the Court of Errors, Chancellor Walworth remarked: "*Inhabitancy* and *residence* do not mean precisely the same thing as *domicil*, when the latter term is applied to succession to personal estate, but they mean a fixed and permanent abode or dwelling place for the time being, as contradistinguished from a *mere temporary locality* of existence."

Mr. Justice Nelson, then Chief Justice of New York, delivering the opinion of the court in *Frost* v. *Brisbin*, 19 Wend. 11, said that the word "inhabitant" implies a more fixed and permanent abode than the word "resident," and "frequently imports many privileges and duties which a mere resident cannot claim or be subject to," and that "the transient visit of a person for a time at a place, does not make him a resident while there; that something more is necessary to entitle him to that character. There must be a settled, fixed abode, an intention to remain permanently at least for a time, for busi-

ness or other purposes, to constitute a residence within the legal meaning of that term." The settled rule that a person may be a resident in one State and have his domicil in another was recognized, and the decision has been often cited with approval by the courts of New York as well as of many other States.

In *Bartlett* v. *The Mayor &c.*, 5 Sandf. (N. Y.) 44, the plaintiff sought an injunction against the collection of certain taxes on personal property for which he had been assessed in the city of New York, on the allegation that he resided in Westchester County, which was refused, on the ground that, while plaintiff's home was in Westchester County, his residence for a portion of the year was in the city of New York. *Frost* v. *Brisbin* was relied on, and the definition of "residence" in Webster's dictionary adopted, namely, "the dwelling in a place for some continuance of time." So in *Douglas* v. *Mayor &c.*, 2 Duer, 110, Douglas was held to be a resident of the city of New York and liable to be taxed as such, although his domicil was in Flushing. These cases were favorably commented on in *Bell* v. *Pierce*, 51 N. Y. 12, in support of a similar conclusion.

As to the statute of limitations, it will have been observed that there were two exceptions to its operation: (1) Where the debtor was absent from the State when the cause of action accrued: (2) Where the debtor, after the cause of action had accrued, departed from and resided out of the State. Under the first exception, absence was sufficient to avert the bar, because the statute did not commence to run until the return of the debtor into the State, and such return it was decided must be open and notorious, so that a creditor might with reasonable diligence find his debtor and serve him with process. *Engel* v. *Fischer*, 102 N. Y. 400. But to bring a case within the second exception something more than absence was essential to be shown. In *Wheeler* v. *Webster*, 1 E. D. Smith, 1, Judge Ingraham, speaking for the New York Court of Common Pleas, (then composed of Ingraham, Daly and Woodruff, JJ.,) said that "it was necessary to prove that the debtor departed from the State, and also that he resided out of the State. The evidence did not tend to show this. For

aught that is in proof before us, the absence may have been merely temporary; excursions for pleasure or business, with a return to this State as the residence of the debtor. . . . The plaintiff should have proven that the defendant was a resident of some other place than the State of New York, or should have shown a residence for some time elsewhere." In *Harden* v. *Palmer*, 2 E. D. Smith, 172, it appeared in an action for goods sold, to which the statute was pleaded, that the defendant had been absent in Europe after the sale, at one time for eight months and at another for two months, which absences, if deducted in the computation of time, brought the commencement of the suit within six years; but there was no evidence that the debtor had any domicil in the State, and the Common Pleas (composed of the same judges) held that the absences were properly deducted by the trial court. The opinion of Judge Daly inclined to the view that absence, whether permanent or temporary, might be equivalent to residing out of the State; but Judge Woodruff, in a separate opinion, put the decision on the ground that there was no evidence that the defendant had any domicil in the State, and "if not, he, of course, resided out of the State when he went to Europe," and, therefore, the periods of absence were properly excluded. In *Burroughs* v. *Bloomer*, 5 Denio, 532, 535, the court say: "The expressions, 'and reside out of the State' and 'the time of his absence,' have the same meaning; they are correlative expressions. So that while the defendant in this case resided out of, he was absent from the State." But this was said in respect of the contention that a person who had resided in New York and had moved to and was actually residing in New Jersey, had resumed his residence in New York because he visited and transacted business there. Although the cause of action accrued before the defendant removed to New Jersey, the distinction between the return into the State referred to in the first clause of the section, and departures and returns under the second clause, is carefully pointed out. Under the former, when standing alone, the time commenced running on the first return and continued to run without reduction; and hence the latter was introduced

by way of amendment, in order that removal and residence abroad after the statute commenced to run might suspend its operation during the continuance of an absence or absences so occasioned. But mere presence was not tantamount to residence under the statute, nor mere absence equivalent to residence elsewhere. And the occasional absences of a resident of the State continuing to reside therein were not to be deducted in computing the statutory term. *Ford* v. *Babcock*, 2 Sandf. (N. Y.) 518, 529.

Apparently, because this was obviously so, the legislature of New York, by an act passed April 25, 1867, (Laws N. Y. 1867, p. 1921,) amended section 100 by adding after the words " and reside out of this State" the following, " or remain continuously absent therefrom for the space of one year or more." Absence for the time specified was thus provided to be deducted from the time limited for the commencement of actions, so that, whether the defendant resided out of the State or not, such absence would suspend the running of the statute.

We hold that the residence out of the State which operated to suspend the running of the statute under section 100 as originally framed, was a fixed abode entered upon with the intention to remain permanently, at least for a time, for business or other purposes, and as there was no evidence tending to establish such a state of fact here, the judgment must be reversed. The same conclusion has been reached in effect by many of the state courts, and reference to decisions in Massachusetts, Maine, Vermont and New Hampshire will be found in the well-considered opinion of the Supreme Court of Illinois in *Pells* v. *Snell*, 130 Illinois, 379, where the terms of the statute were nearly identical with those of that of New York, and the court approved the definition of "residence" as given in *Matter of Wrigley*, 8 Wend. 134; *Frost* v. *Brisbin*, 19 Wend. 11; and *Boardman* v. *House*, 18 Wend. 512.

*The judgment is reversed and the cause remanded, with instructions to proceed in conformity with this opinion.*