HOWARD

*v.*

THE CITIZENS' BANK AND TRUST COMPANY.

MEMBERS OF CONGRESS; PRIVILEGE; ATTACHMENT; AFFIDAVITS; RESIDENCE.

1. Members of Congress while in attendance upon its sessions are not privileged from being sued in this District.
2. An affidavit in support of an attachment may properly be made before a notary public in another jurisdiction.
3. A member of Congress in attendance upon the sessions of Congress for the purpose of discharging his official duties, but retaining a dwelling place in his State and his domicile therein,

is a nonresident of the District of Columbia within the meaning of the attachment law, unless he shows he intends to make this District his settled and fixed abode.

No. 752.  Submitted January 14, 1898.  Decided February 8, 1898.

HEARING on an appeal by the defendant in an action of debt from a judgment rendered after an order had been made overruling his motion to quash an attachment and sustaining a demurrer to his plea to the declaration. *Affirmed.*

The COURT in its opinion stated the case as follows:

This is an appeal from a judgment in an action of debt accompanied with proceedings in attachment.

The Citizens' Bank and Trust Co., a private corporation of the State of Tennessee, and engaged in business there, obtained a judgment for the sum of $415.13 in the Circuit Court of De Kalb County, Alabama, on the 3d day of February, 1896, against Milford W. Howard, a citizen of Alabama.

The judgment remaining unsatisfied, the appellee brought suit thereon in this District on the 6th day of March, 1897, and procured service upon defendant Howard. On the same day an attachment was sued out on the ground that the defendant was a nonresident of the District of Columbia, and had his residence in the State of Alabama, in the County of De Kalb, in the Ninth congressional district, of which the defendant was then a Representative in the Congress of the United States.

The affidavits upon which the attachment issued were verified by a notary public of the State of Tennessee.

By virtue of this writ, credits of the defendant to the amount of $91.12 were attached in the hands of the Lincoln National Bank.

Defendant pleaded his privilege as a member of Congress in abatement of the action, alleging the following facts under oath:

" That at the time of the filing of the plaintiff's declaration herein and for a long time before, he, the said defendant, was and from thence hitherto hath been and still is a member of the House of Representatives of the United States, having been elected as the representative in the said House of Representatives of the Seventh Congressional District of the State of Alabama.

"That the defendant at the date of the institution of this action was and had been for a long time, to wit, three months, in the District of Columbia as such member of the House of Representatives, attending upon the sessions of said House of Representatives and otherwise engaged in discharging his duties as a member of the said House of Representatives.

"That at the date of the institution of this suit the said defendant was remaining and commorant in the District of Columbia, the House of Representatives having dissolved and adjourned without day two days before, and another House of Representatives, of which also the said defendant was and is a member, being expected to convene in nine days, and the said defendant was in the said District for the purpose of attending and being present upon the convening of the said House of Representatives."

Subject to the foregoing plea, defendant appeared and moved to quash the attachment upon several grounds, but only two of these are presented in the assignments of error. These grounds are: 1. The affidavits are insufficient because certified by a notary public of the State of Tennessee, and not by a judge of a court of record. 2. The defendant was not, at the time, a nonresident of the District.

The second ground was supported by the following affidavit, which was not controverted:

"Before me personally appeared Milford W. Howard, who, being first duly sworn, deposed and on his oath said—

"That he is the person named as defendant and sued by

the Citizens' Bank and Trust Company in the above entitled cause, now depending in the Supreme Court of the District of Columbia, and that he is the owner of the money seized upon the writ of attachment issued in said suit on the seventeenth day of April, 1897.

"Affiant further says that he is a member of the House of Representatives of the United States, being the Representative of and elected in the Seventh congressional district of the State of Alabama; that he was elected such Representative at an election held on the 6th day of November, 1894, and duly qualified and served as such member in the Fifty-fourth Congress; that he was re-elected such Representative at an election held on the 3d day of November, 1896, to serve as a member in the Fifth-fifth Congress, and that he has duly qualified and is now a member of the said Fifty-fifth Congress.

"That as a Representative in Congress it has been the duty of affiant to reside in the city of Washington during the sessions of Congress held since the fourth day of March, 1895, and that affiant has in the discharge of such duty and of the other duties incident to his membership in Congress resided in the city of Washington during such sessions and also at various times and various periods in the recesses of Congress and between such sessions; that at the time at which the suit above mentioned was brought and the above-mentioned writ of attachment was issued and served affiant was and had been for several months resident in the city of Washington as a member of Congress of the United States, in attendance upon the meetings of the House of Representatives when the said House was in session, and engaged in other duties incident to such membership at other times.

"Affiant further says that he has been personally present in the city of Washington during the aforesaid periods of residence, except for occasional temporary absences of short duration, such as his business made necessary and his leg-

12 Ct. App.—16

islative duties would allow; that he has always had in the said city a regular and permanent lodging place, at which he has slept and at which he kept such articles of personal property as were necessary for his daily uses, and at which he has transacted such business of a public or of a private nature as he has had to do, and at which he has received such persons as chose to visit him or desired to see him in reference to any matters of business; that he has had no lodging place outside of the District of Columbia, except his dwelling house at Fort Payne, in the State of Alabama, the place of his domicile; that during a considerable portion of his residence in the said city he has been accompanied by his wife, who has—with him—his lodgings above mentioned and in the same manner; that affiant's wife has been so living with him continuously since the 10th day of January, 1897, and is still with him, and that affiant has been actually dwelling, abiding and residing in the said city continuously, except for occasional temporary absences as are above mentioned, since the 1st day of December, 1896, and that he intends and expects to continue so to reside in said city until the end of the present session of Congress and so much longer as his public duties and private business may require.

"Affiant says further that during all the time of his residing in this city, as aforesaid, he has gone openly and publicly about the said city, appearing frequently in the streets and other public places thereof, transacting business with different persons in different parts of the said city; that his lodging place has not been concealed or kept from the knowledge of any person who chose to inquire for it, and that he has never attempted to conceal himself or to evade the service of any process."

The court overruled the motion to quash, sustained a demurrer to the plea of privilege, and, no further plea having been entered, rendered judgment for the amount of the debt, together with condemnation of the credits attached.

*Mr. Charles A. Keigwin* and *Mr. Charles W. Clagett* for the appellant:

1. By Article I, section 6, of the Constitution, members of both Houses of Congress are "in all cases, except treason, felony and breach of the peace, privileged from arrest during their attendance at the sessions of their respective Houses, and in going to and returning from the same." Both in England and America, privilege from arrest had always been construed to include the service of summons. *Bank* v. *McSpedan*, 5 Biss. 64.

It is unnecessary, however, to place appellant's objection to the jurisdiction on the mere words of the Constitution. By the common law of England, as it existed at the date of the American colonization and as it was transplanted to the colonies, members of Parliament were privileged, not only from arrest, but from all civil suits as well. Originally the privilege was coextensive with the member's term of service, and included his servants and his property. By several statutes, particularly 12 and 13 William III, this privilege was abridged, so that only the representative himself was exempt from suit, and he only during the actual session of Parliament and for fourteen days before and after each session. The fact of such privilege is beyond question. *Holliday* v. *Pitt*, 2 Strange, 985; *Barnard* v. *Mordaunt*, 1 Kenyon, 125; *Gowdy* v. *Duncombe*, 1 W. H. & G. 430; *Caszidy* v. *Stewart*, 2 Man. & Gr. 437; 1 Blackstone Comm. 164; 1 Story Const., Sec. 861; Bacon's Abridg., Vol. 8, p. 183; May, Parl. Prac. 140. The privilege was given a liberal construction. 1 Tidd's Practice, 196. The decided preponderance of American authority establishes the existence of such exemption in favor of members of Congress and of the State legislatures. *Bolton* v. *Martin*, 1 Dallas, 296; *Bank* v. *McSpedan*, 5 Bissell, 64; *Nones* v. *Edsall*, 1 Wall. (Jr.) 189; *Lyell* v. *Goodwin*, 4 McLean, 29; *Miner* v. *Markham*, 28 Fed. R. 387; *Doty* v. *Strong*, 1 Pinney, 84; *Anderson* v. *Rountree*, 1 Pinney, 115;

*King* v. *Coit,* 4 Day, 129; *Tillinghast* v. *Carr,* 4 McCord, 152; *Hoppin* v. *Jenckes,* 8 R. I. 453.

The objection, that exemption from suit is an invidious discrimination in favor of a privileged class, overlooks the purpose of the privilege. It is not for the sake of the member, about whose private affairs no one is concerned but himself and his personal friends, but in the interest of his constituents and of the nation at large, all of whom are concerned in having the member's presence in Congress and in securing his full attention to the public business. 1 Story Const., Sec. 860.

Again, if the member of Congress can be sued here upon debts contracted at his home, is he to be subjected to the law of the forum, and deprived of the defenses, such as limitations, exemptions, etc., of which he might have availed himself at home, but which are not available under the local law?

Advantage is taken öf appellant's presence here in the discharge of a high public duty to enforce a demand which could not have been enforced against him as a private citizen, and to strip him of immunities to which he is entitled by the law of his domicile and by the law of *loci contractus.* A suit brought for the purpose of evading the exemption laws of the debtor's domicile will not be entertained. Waples, Homestead and Exemption, 893; *Drake* v. *Railroad Co.,* 69 Mich. 168; *Todd* v. *Railroad Co.,* 33 Mo. App. 110; *Mason* v. *Beebee,* 44 Fed. R. 556. The bringing of suit for such purpose may be enjoined. *Cole* v. *Cunningham,* 133 U. S. 137; *Keyser* v. *Rice,* 47 Md. 203; *Dehon* v. *Foster,* 7 Allen 57; *Dinsmore* v. *Neresheimer,* 32 Hun, 204. Attachment will not lie against a person privileged from arrest. *Knight* v. *Richmond,* 2 R. I. 75.

2. The attachment must be quashed because the affidavits were executed before a notary public. The power of a notary public to administer oaths is not incident to his duties at common law, but rests entirely upon positive stat-

utes. Proffat on Notaries, Sec. 24; *Keefer* v. *Mason*, 36 Ill.
406; *United States* v. *Curtis*, 107 U. S. 671; *United States* v.
*Hall*, 131 U. S. 53; *United States* v. *Smith*, 17 Fed. R. 907;
*Haight* v. *Proprs., etc.*, 4 Wash. C. C. 601; *Craig* v. *Brown*,
3 Wash. C. C. 503; *Stanton* v. *Ellis*, 16 Barbour, 319; *People*
v. *Tioga*, 7 Wendell, 516; *Benedict* v. *Hall*, 76 N. C. 113.

3. The attachment must be quashed because the affidavits
were not taken before a judge of a court of record.

Under the Maryland act, 1795, Ch. 56, the affidavits for
attachment, if executed in a foreign jurisdiction, must be
sworn to before a judge of some court; and the authority of
the judge to administer such oath must be certified by the
clerk of the court or another of certain specified officers.
Unless the affidavits are executed in strict compliance with
the statute, the attachment is void; and as any departure
from the statute goes to the jurisdiction, objection on account
thereof may be taken at any stage of the proceeding. *Eves-
son* v. *Shelby*, 32 Md. 344; *Prentiss* v. *Gray*, 4 Har. & J. 200;
*Coward* v. *Dillinger*, 56 Md. 59; *Bruce* v. *Cook*, 6 Gill & J.
348; *Bolton* v. *White*, 2 Cr. C. C. 426. And compliance
with the statutory requirements must appear on the face of
the proceedings. *Boarman* v. *Israel*, 1 Gill, 381; *Mears* v.
*Adreon*, 31 Md. 229. That the Maryland act of 1795 is in
force in this District, except so far as modified by the act of
Congress of 1866, (R. S. D. C. Secs. 782–789), is well settled.
*Wallace* v. *Maroney*, 6 Mackey, 221; *Hoover* v. *Hathaway*, 20
D. C. 591.

Attachment is a special and limited jurisdiction, super-
added to the general jurisdiction of the court, and the court
in exercising such jurisdiction must follow the statute con-
ferring it. Evans' Practice, (Ed. 1839), 25; *Shivers* v.
*Wilson*, 5 Har. & J. 132.

4. The attachment must be quashed because appellant is
not a nonresident. The fact that appellant had a fixed
abode in the District, where process could be served upon
him, makes him a resident in the sense of the attachment .

law. Waples on Attachment, Sec. 39 ; *Barr* v. *Perry,* 3 Gill, 326; *Weber* v. *Weitling,* 18 N. J. Eq. 443; *Bundred* v. *Del Hoyo,* 20 N. J. L. 328. Unless, therefore, the mere fact of a foreign domicile made appellant a nonresident, he was not liable to attachment. That one may have domicile elsewhere and yet be resident here, is well settled. *United States* v. *Nardello,* 4 Mackey, 503; *United States* v. *Cross,* 20 D. C. 392; *Robinson* v. *Morrison,* 2 App. D. C. 105; *Dorsey* v. *Kyle,* 30 Md. 518; *Risewick* v. *Davis,* 19 Md. 82; *In re Thompson,* 1 Wend. 43; *Haggart* v. *Morgan,* 5 N. Y. 422; *Baldwin* v. *Flagg,* 43 N. J. L. 495. Actual dwelling in a place, if of sufficient duration and sufficiently permanent character, constitutes residence, without reference to domicile or intention. *Bank* v. *Merritt,* 1 Green, 134; *Monroe* v. *Williams,* 37 S. C. 86; *Knapp* v. *Gerson,* 25 Fed R. 197; *Brown* v. *Ashbough,* 40 How. Pr. 261. The only intention requisite to make one a resident is an intention to "remain permanently at least for a time." *Frost* v. *Brisbin,* 19 Wend. 13; *Barney* v. *Oelrichs,* 138 U. S. 529.

One who leaves his domicile to engage in the public service at some other place, acquires residence at such other place. *Lawson* v. *Adlard,* 46 Minn. 244. A public officer whose duties are performed at Washington is a resident of this District. *Butterworth* v. *Hill,* 114 U. S. 128.

*Mr. Alex. H. Holt* and *Mr. Chapin Brown* for the appellee:

1. The liability of a member of Congress to civil process, has been long settled by judicial decision and practice. *Merrick* v. *Giddings,* MacA. & M. 55; *Peters* v. *League,* 71 Am. Dec. 622, 13 Md. 58; *Griffith* v. *Gentry,* 27 Tex. 461; *Tillinghast* v. *Carr,* 4 McCord, 91.

2. The affidavits were properly made before a notary public. This court has held that an affidavit made before a notary public in a State is sufficient. *Towers* v. *Maneely,* 11 App. D. C. 88. It has been a long established practice of this court to recognize the validity of such affidavits in

attachments. The reported cases will show that most of the affidavits in attachment suits have been made before notaries public, when made in the States. *Newman* v. *Hexter*, MacA. & M. 88; *Gross* v. *Goldsmith*, 4 Mack. 126 ; *Elliot* v. *Maroney*, 6 Mack. 221; *Boulter* v. *Behrend*, 20 D. C. 567 ; *Matthai* v. *Conway*, 2 App. D. C. 45; *Williams* v. *Ten Eyck*, 5 Mack. 168.

3. The defendant is shown to be a nonresident of the District under the evidence. He is a resident of the State of Alabama. This original judgment was gotten against him there. His residence and home is there, his dwelling house being at Fort Payne, Alabama. The Constitution of the United States requires him to be a citizen of the State he represents in Congress. He comes here with the intention of returning to his State. He can have but one domicile or home. 3 Am. & Eng. Encyc. L. 197 *et seq.,* 2d Ed.; Drake on Att., 7th Ed., Secs. 57*a*–67; *Green* v. *Wyndham*, 13 Me. 225, 228 ; *The Venus*, 8 Cranch, 253, 290; Story, Conflict of Laws, Sec. 44 ; *Robinson* v. *Morrison*, 2 App. D. C. 105 ; *Barbour* v. *Hotel Co.*, 2 App. D. C. 174 ; *Matthai* v. *Conway*, 2 App. D. C. 45.

4. Appellant's claim of exemptions can not be sustained. (1st) The exemption laws do not apply to nonresidents. Drake on Att. 7 Ed., Sec. 244*a*; *Yelverton* v. *Burton*, 26 Penn. St., 351; *McCarthy's Appeal*, 68 Penn. St., 217; *Commissioners* v. *Reley*, 75 N. C. 144. (2d) The property (money) attached or garnished in this case is not exempt under our attachment statute. R. S. D. C. pp. 94 and 95, Sec. 797. (3d) It is not proven that under the exemptions laws of Alabama this money would be exempt from attachment in Alabama.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. The first question for consideration arises on the plea of privilege. This was denied in a carefully considered decision of the Supreme Court of the District of Columbia,

in general term, made nearly twenty years ago, the soundness of which, until now, has not been questioned. *Merrick* v. *Giddings*, 1 MacA. & M. 55.

Having examined the question anew, in the light of the able argument made on behalf of the appellant, we can not agree to the contention that that decision is not sound on principle; nor are we satisfied that it is not in accord with the weight of judicial opinion, even in England, to the common law of which, it is contended, we must resort.

That parliament itself made most extravagant claims of privilege, and often enforced the same, is undoubtedly true; but when opportunity occurred, these were often denied by the judiciary.

In the famous case of *Stockdale* v. *Hansard*, 9 Ad. & El. 1; S. C. 36 E. C. L. 2782, Lord Chief Justice Denman, after reviewing at length the early claims of parliamentary privilege, and conceding the propriety of exemption from arrest and from liabilities that would necessarily interfere with the performance of public duties, said: "In early times their very horses and servants might require protection from seizure under legal process as necessary to secure their own attendance; but when this privilege was strained to the intolerable length of preventing the service of legal process, or the progress of a cause once commenced against any member during the sitting of parliament, or of threatening any who should commit the smallest trespass upon a member's land, though in assertion of a clear right, as breakers of the privileges of parliament, these monstrous abuses might have called for the interference of the law and compelled the courts of justice to take a part."

Before the American Revolution, the parliament itself obviated the necessity of the courts of justice taking part in the matter of a claim of exemption from the service of civil process, unaccompanied by arrest, by the enactment of a statute expressly abolishing it. 10 Geo. III, Ch. 50.

We deem it neither necessary nor important to inquire

whether that statute has been regarded as in force in the American colonies or States before or after the Revolution; nor whether the privileges of legislative bodies, as exercised or claimed in England, prior thereto, constitute a part of the common law as adopted or recognized in those colonies and the succeeding States.

Strange as the doctrine may seem after a revolution destructive of the special privileges of class and person, we are not called upon to deny it. It is a question peculiarly for the tribunals of the several States in dealing with the privileges of their respective legislatures, and these have not been uniform in their decisions.

What we are considering here is the privilege claimed for members of the Congress of the United States in this jurisdiction, and we need only look to the Constitution, which enumerates their powers and grants the only privileges to which they are entitled.

Article 1 of Section V. declares that Senators and Representatives "shall, in all cases, except treason, felony, and breach of the peace, be privileged from arrest during their attendance at the session of their respective houses, and in going to and returning from the same. . . ." Language so plain does not leave room for interpretation.

Save in certain cases mentioned, Senators and Representatives are exempted from arrest, and nothing more. The court was right in sustaining the demurrer to the plea.

2. The motion to quash the attachment because the supporting affidavits were made before a notary public of the State of Tennessee, was correctly overruled.

The practice of granting attachments upon affidavits made before notaries in other jurisdictions has obtained for years in this District, and we see no reasonable ground upon which it can be questioned. The statute permits the clerk to issue the writ whenever *an affidavit* of certain facts shall be filed in his office. R. S. D. C., Sec. 782.

In construing the statute regulating actions of forcible

entry and detainer in this District (R. S. D. C., Sec. 684), the Supreme Court of the United States held that the requirement of a "written complaint on oath of the person entitled to the premises," was satisfied by an affidavit made before a notary public of the State of New York. *Harris* v. *Barber*, 129 U. S. 366, 371.

The "affidavit" required in section 782 is synonymous with the "written complaint on oath" required by the other.

Under that statute, as well as under the authority of *Harris* v. *Barber*, *supra*, it has been held that the affidavit required of the plaintiff or his agent under the Seventy-third Rule of the Supreme Court of the District of Columbia may be made before a notary public of any State. *Towers* v. *Maneely*, 11 App. D.C. 88. That rule, like the statute in this case, fails to designate any particular officer before whom the affidavit shall be made. See, also, *Matthai* v. *Conway*, 2 App. D. C. 45, 50.

3. Unless the defendant Howard was a nonresident of the District of Columbia, within the meaning of our statute, when the attachment was sued out, it was wrongfully issued and ought to have been quashed on motion.

We have had occasion to consider the meaning of that word in a case wherein the facts differed considerably, however, from those presented here. Therein it was said: "The word nonresident, as used in our statute, must be taken in its ordinary and usual signification. A man's residence is where he actually dwells at the time, not merely where he may carry on business regularly. A man's domicile may be in one State, his residence in another, and his place of business in a third. A man's home, the place where his wife and children actually reside, is ordinarily and yet not necessarily his place of residence. He may for purposes of business establish himself in another State for an indefinite period, away from his family, and remain there so continuously as to make himself a resident thereof for all the purposes of the attachment laws generally. But he can not be

a resident of two distinct places at the same time." *Robinson* v. *Morrison*, 2 App. D. C. 105, 124; *Barney* v. *Oelrichs*, 138 U. S. 529, 532, 533. In the case last cited it was said that "the words, 'to reside out of the State,' mean the taking up an abode or dwelling place elsewhere, and not a mere temporary sojourn for transient purposes." It was also said, following *Frost* v. *Brisbin*, 19 Wend. 11, that the word "inhabitant" implies a more fixed and permanent abode than the word "resident."

Bearing the above in mind, it remains to consider whether the facts set out in the affidavit of defendant are sufficient to show that he was, at the time, a resident of this District, and not of the State of Alabama.

It is to be presumed that at the time of his election to Congress, both in November, 1894 and 1896, defendant was, as required by the Constitution, an inhabitant of the State of Alabama. The Constitution, however, does not require that he shall remain an inhabitant or resident of his State during his term of office; nor does it require that he shall reside in the Capital, as is provided by law in the case of some executive officers. *Butterworth* v. *Hill*, 114 U. S. 128.

Admitting, as his affidavit does, that he has not abandoned his domicile in Alabama, where he still has a dwelling house, it is incumbent upon him to show clearly that he has come into the District with the intention of settled, fixed abode, though not necessarily a permanent one. He must show that he is a *bona fide* resident as contradistinguished from a mere sojourner or transient visitor, for purposes of pleasure or business and for an indefinite time.

Stating facts peculiarly within his own knowledge, and tending to establish a conclusion into which the intention with which these acts were done enters largely, his affidavit ought to be construed strictly, and wherever the statement is ambiguous the doubt should be resolved against him. Taking this view of the affidavit, which has been set out in full in the statement of the case made above, we do not

regard it as sufficient. The whole statement of the facts tending to show residence is qualified and restrained by the paragraph preceding the same, wherein he says: " *That as a Representative in Congress, it has been the duty of affiant to reside in the city of Washington during the sessions of Congress held since the 4th of March, 1895, and that affiant has, in the discharge of such duty and of the other duties incident to his membership, resided in the city of Washington during such sessions, and also at various times and various periods in the recesses of Congress, and between such sessions.*"

Although he owed no express duty, as we have seen, to reside in the city of Washington, he makes it appear that it was the duty of attendance upon the sessions of Congress which brought him here, and nothing more. As to his place of residence between sessions, the statement is vague and uncertain. Beginning as this residence does in March, 1895, nothing is said of his residence in November, 1896, at the time of his re-election to Congress. And yet, in the absence of a statement to the contrary, we must presume that he was, at that time, an *inhabitant* of the State of Alabama, as required by the Constitution.

Again he says that " he has no lodging place outside of the District of Columbia, except his dwelling house at Fort Payne, in the State of Alabama, the place of his domicile"; and then, after stating that he has actually dwelt and resided in Washington continuously, "except for such occasional temporary absences as are above mentioned," he concludes by saying "that he intends and expects to continue so to reside in said city until the end of the present session of Congress, and so much longer as his public duties and private business may require."

It nowhere appears that he was engaged in any private business in Washington. Public duties, solely, brought him to the District of Columbia. As said in the affidavit supporting his plea, he was, when sued, "in the said District for the purpose of attending and being present upon

the convening of the House of Representatives." He has "a dwelling place" in Alabama, and his apparent purpose is to return there when his public duties shall permit. In the absence, then, of a plain, unequivocal statement to the contrary, we must regard the appellant as an inhabitant and resident of Alabama, a visitor only to the District of Columbia; and therefore a nonresident of the latter within the meaning of the statute. The court was right in over-ruling the motion.

Finding no error in the record, the judgment will be affirmed with costs. And it is so ordered.      *Affirmed.*